William McLAUGHLIN and Nellie
McLaughlin, Appellants,

v.

NATIONAL BENEFIT LIFE INSUR-
ANCE COMPANY, Capital Dynamics
and Norman Weinberg, Appellees.

No. 65341.

Supreme Court of Oklahoma.

April 19, 1988.

Rehearing Denied May 9, 1989.

Paul McBride, P.C. by Paul McBride,
Jenks, and W.C. Sellers, Inc. by W.C. "Bill"
Sellers, Sapulpa, for appellants.

Feldman, Hall, Franden, Woodard & Far-
ris by Joseph R. Farris and Stephen C.

Stapleton, Tulsa, for appellee National Benefit Life Ins. Co.

LAVENDER, Justice:

In February of 1983 appellants William and Nellie McLaughlin were contacted by Roger Hilst concerning life insurance plans. Roger Hilst was a producing sub-agent of appellee National Benefit Life. The general agent under whom Hilst worked was Norman Weinberg. Norman Weinberg in turn did business as Capital Dynamics.

The contact between Hilst and the McLaughlins resulted in a decision whereby the McLaughlins were to cash in their existing life insurance and use the cash obtained to purchase a life insurance plan offered by appellee National Benefit Life. This plan was to consist of two life insurance policies; a $100,000 policy issued to William and a $50,000 policy issued to Nellie. Additionally an annuity was to attach to the policy issued to William. The plan was attractive to the McLaughlins because it was structured in such a way that their payment of the cash value of their former policies would pay the first year premiums on both policies and put a substantial amount in the annuity. In succeeding years premiums would be paid by drawing cash advances against the accrued cash value of the policies supplemented by interest earned on the annuity.

The McLaughlins made their applications for the National Benefit Life policies at the end of February 1983. No funds were submitted with these applications. The application for the annuity to attach to the policy to be issued to William was filed on March 24, 1983. A check for $250 was submitted with this application to open the annuity account. Near the first of April, William's application was returned "rated up" because of certain health problems. This meant that the premiums for William's policy would be substantially higher and had the effect of defeating the purpose of the life insurance plans envisioned by Hilst and the McLaughlins. Hilst came up with an alternative plan which called for securing a policy for William from Lincoln Liberty Life Insurance in the amount of $100,000. The policy for Nellie from National Benefit Life would remain in effect and the annuity would be attached to Nellie's policy. On April 14, 1983 William made application for the Lincoln Liberty policy. On April 19, 1983 the McLaughlins tendered a check for $6,550 payable to Capital Dynamics. On April 20, 1983 Lincoln Liberty issued the policy requested for William. Nellie then made application for annuity with National Benefit on April 22. This application with a cover letter from Capital Dynamics was mailed on April 27, 1983.

At this point problems arose. A check from Capital Dynamics to National Benefit in the amount of $3,022.50 designated for Nellie McLaughlin was dishonored by Capitol Dynamics' bank. It appears that Norman Weinberg had absconded with the funds of Capital Dynamics. Hilst continued to be in contact with National Benefit in regard to the problems involving the McLaughlins.

Due to a contractual arrangement between National Benefit and their general agent, Norman Weinberg, the commissions due the producing agents under Weinberg could be subtracted before funds were forwarded to National Benefit. National Benefit in its subsequent communications with Hilst indicated that it credited the funds received from Capital Dynamics as paying premiums of the policies issued to William and Nellie and the $250 payment into the annuity attached to William's policy. National Benefit indicated it had not received Nellie's application for an annuity.

Throughout the ensuing communications with Hilst and the Oklahoma Insurance Commissioner, to whom the McLaughlins had complained, National Benefit took the position that it had received $2,482.79 on behalf of the McLaughlins and that this money had paid the premiums on the policies for William and Nellie and included $250 paid into the annuity attached to William's policy. National Benefit continued to maintain that the policies were in full force and effect.

On December 8, 1983, counsel for the McLaughlins sent a letter to National Benefit demanding reimbursement of the entire $6,800 paid by the McLaughlins to Capital Dynamics. On December 15, National Benefit replied that if the letter of the 8th was a request for termination of the policies it would return the $2,482.79 received when that request was specifically made. National Benefit also stated that it would honor legally binding commitments made by its former agent if accompanied by proper documentation. Upon receipt of the letter from National Benefit the McLaughlins instituted the present action alleging that National Benefit's actions were in bad faith and seeking as damages the $6,800 paid to Capital Dynamics plus damages for infliction of emotional pain and distress and punitive damages.

The matter was tried to a jury. In addition to the above-stated facts it was brought out at trial that the application for an annuity to attach to the policy issued to Nellie McLaughlin had been found in National Benefit's files. At the conclusion of the trial the court granted National Benefit's demurrer to the evidence concerning the claim for punitive damages. The jury returned a verdict for the McLaughlins on the question of National Benefit's liability on the refund of the $6,800 and on the claim for infliction of emotional pain and distress. The total amount of the verdict was $56,800.00.

Following entry of judgment on the jury verdict the McLaughlins appealed raising several issues, among which was the question of the trial court's sustainment of the demurrer to the evidence on the question of punitive damages. Approximately five months after the filing of the appeal the McLaughlins summoned National Benefit into court for a hearing on assets in regard to satisfaction of the judgment rendered. Rather than appearing at this hearing National Benefit tendered a check to the McLaughlins for the amount of the judgment rendered. This check was accepted and negotiated. However, National Bene-fit did not obtain a written release of judgment from the McLaughlins. At this point National Benefit filed a motion to dismiss the appeal. This Court entered an order deferring consideration of the motion until assignment of the case on the merits.

The Court of Appeals, Division II, to which this case was initially assigned for merits consideration denied the motion to dismiss holding that the McLaughlins did not waive the right of review as to the question of punitive damages. The court held that punitive damages could be reviewed independently of the predicate award of actual damages and therefore found that dismissal was not proper, relying on *United Engines, Inc. v. McConnell Construction, Inc.*[1]

The Court of Appeals, however, affirmed the trial court, finding no merit in the asserted errors argued by the McLaughlins. In regard to the punitive damage issue the court stated:[2]

Finally, we find no error in refusing to instruct on punitive damages, notwithstanding the pleadings, evidence, and ultimate recovery of actual damages. An insurer's violation of the implied duty to deal fairly and to act in good faith "gives rise to an action in tort for which consequential, *and in a proper case, punitive*, damages may be sought." *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla.1977) (emphasis added). Clearly, punitive damages do not ipso facto follow from *every* breach of this duty or in *every* case a jury may render a verdict for the wronged party. "Exemplary damages are highly penal and punishment thereof should not be lightly imposed." *Cox* [*v. Theus* ], 569 P.2d [447] at 450 [Okla.1977] (citation omitted).

This same policy was also expressed in *Galt–Brown Co. v. Lay*, 183 Okla. 87, 88–9, 80 P.2d 567, 569 (1938) (emphasis added), which reversed an award of punitive damages. The court observed that

---

**1.** 641 P.2d 1101 (Okla.1980).

**2.** Pages 4 and 5 of the court's typewritten memorandum opinion handed down March 31, 1987 under this case number.

the statutory authorization for punitive damages is "highly penal and punishment thereof should be imposed *only* when the evidence *plainly shows* oppression, fraud, malice, or gross negligence." In *Galt–Brown*, the supreme court noted evidence of serious pollution by the defendant company as well as its refusal to abide with an arbitration settlement, but held that the proof on the whole did not show "any aggravating circumstances sufficient to justify the submission to the jury of the question of exemplary or punitive damages." Under the record in the instant case we likewise find an absence of evidence of any of the requisite aggravating circumstances.

McLaughlins petitioned for rehearing, arguing, among other points, that the Court of Appeals had applied the wrong standard regarding the issue of punitive damages. The Court of Appeals entered an order granting rehearing and modifying the prior opinion to reverse and remand the matter to the trial court for a separate trial on the issue of punitive damages. This action was based on the Court of Appeal's conclusion that a less strict standard applies to the question of proof to support a claim for punitive damages in an action based on alleged bad faith dealing by an insurance company than that originally applied by the court. The modification to its holding on the question of punitive damages was the extent of the court's alteration of its previous opinion.

National Benefit has now petitioned this Court for writ of certiorari to obtain review of the Court of Appeals' opinion as modified on grant of rehearing. We now grant the requested writ.

Two issues are raised on certiorari. These issues are the ruling on the motion to dismiss and the ruling on the standard of proof relative to punitive damages in an action based on bad faith dealings by an insurance company.

**3.** Supra, note 1.

**4.** Quoting *Tyler v. Shea*, 4 N.D. 377, 61 N.W. 468, 470 (1894).

**5.** 641 P.2d at 1105.

## I.

## THE MOTION TO DISMISS

■ In the case of *United Engines, Inc. v. McConnell Construction, Inc.*,[3] this Court quoted with approval the following rule of law:[4]

"... if it is possible for him [a successful litigant] to obtain a more favorable judgment in the appellate court without the risk of a less favorable judgment from a new trial of the whole case, ... then the acceptance of what the judgment gave him is not inconsistent with an appeal for the sole purpose of securing, without retrial of the whole case, a decision more advantageous to himself."

Applying that rule to the case before it in which United Engines on cross-appeal sought a more favorable judgment in terms of damages to be allowed after accepting the benefits of the judgment already rendered, this Court stated:[5]

As the actions taken by United were not inconsistent with its position on appeal, we cannot say that United waived its right to appeal. For this reason, we find no validity to McConnell's position that the appeal should be dismissed on the grounds that United waived its right to appeal.

In the present case the appeal on the issue of punitive damages necessarily presupposes the validity of the judgment on the issue of actual damages resulting from bad faith dealings on the part of National Benefit.[6] For that reason, in this case as in the *United Engines* case, the position urged on appeal is not inconsistent with the acceptance of the benefits of the trial court's judgment and does not provide grounds for dismissal of the McLaughlin's appeal as it relates to the trial court's ruling on the issue of punitive damages.

**6.** In the absence of actual damages there can be no award of punitive damages. *Moore v. Metropolitan Utilities Company*, 477 P.2d 692, 694 (Okla.1970).

## II.

## THE STANDARD OF PROOF

■ In the case of *Timmons v. Royal Globe Ins. Co.*,[7] this Court acknowledged the applicability of the standard relating to punitive damages announced in *Cox v. Theus*,[8] noting in turn that case's citation of *Oden v. Russell*,[9] where this Court stated:

Exemplary damages are imposed by the law on the theory of punishment to the offender, for the general benefit of society, and are allowed only in cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, but a person may commit such wilful acts in reckless disregard of another's rights that malice will be inferred.

*Timmons* involved a claim of bad faith dealing by an insurance company. Our recognition of the standard stated in *Oden v. Russell* as applicable in *Timmons* may only be read to indicate that the question of proof necessary to sustain a claim for punitive damages in a bad faith dealing case involving an insurance company is the same standard necessary to sustain such a claim in any case where punitive damages are sought under 23 O.S. 1981 § 9.

In the case of *Slocum v. Phillips Petroleum Co.*,[10] this Court stated:

To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some elements of fraud, malice or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent. *Dilworth v. Fortier*, 405 P.2d 38 (Okl.1964) and *Edwards v. Lachman*, 534 P.2d 670 (Okl.1974). Exemplary damages are allowed only in cases where fraud, oppression, gross negligence or malice, actual or presumed, enter into the cause of action, but a person may commit such willfut acts in reckless disregard of another's rights that malice may be inferred. *Oden v. Russell*, 207 Okl. 570, 251 P.2d 184 (1952).

In the present case the Court of Appeals, in its initial consideration of the matter previously quoted in this opinion applied the standard of proof as set forth in the case of *Galt–Brown Co. v. Lay*.[11] In that case this Court stated that punitive damages could only be imposed where "the evidence plainly shows oppression, fraud, malice, or gross negligence."[12] The Court of Appeals, initially applying this standard to the present case, found no evidence to support the submission of the question of punitive damages to the jury.

■ The evidentiary position advanced by the McLaughlins to support their claim for punitive damages against National Benefit was that they had submitted money for premiums and for an annuity to Capital Dynamics as agent for National Benefit but had received neither the insurance policies nor an accounting for their money when they had made requests for the policies or their money back. The evidence presented to the trial court, however, showed that during the time in question National Benefit had considered policies to be in effect as to both of the McLaughlins as well as the annuity attached to the policy issued to William. The evidence also showed that a third life insurance policy had been issued in the name of William by Liberty Life. The respective evidentiary positions of the parties are well capsulized in the text of a letter exchange between counsel for the McLaughlins and the National Benefit offices.

In a letter of December 8, 1983, the McLaughlins' counsel wrote:[13]

---

7. 653 P.2d 907, 918 (Okla.1982).

8. 569 P.2d 447, 450 (Okla.1977).

9. 207 Okla. 570, 251 P.2d 184 (1952).

10. 678 P.2d 716, 718 (Okla.1984).

11. 183 Okla. 87, 80 P.2d 567 (1938).

12. 80 P.2d at 569.

13. Plaintiffs' Trial Exhibit # 4.

Dear Mr. McCarthy:

This law firm has been retained by William H. and Nellie E. McLaughlin in connection with insurance/annuity business transacted with your agents, Roger Hilst and Capital Dynamics, Inc.

Enclosed are photocopies of both sides of two (2) personal checks written by the McLaughlins, Check No. 8020 in the amount of $6,550.00 and Check No. 7978 in the amount of $250.00 (or in the total amount of $6,800.00). This amount was for insurance and annuity which have not been provided, although the two aforementioned checks were deposited to the account of Capital Dynamics, Inc. and National Benefit Life Insurance Company, respectively.

The amount of money extracted from our clients by your agents is, therefore, $6,800.00. Consider this your formal demand for reimbursement of the aforementioned $6,800.00 within the next fifteen (15) days. The draft issued in reimbursement should be made payable to William H. McLaughlin, Nellie E. McLaughlin, and W.C. Sellers, their attorney, with the draft being forwarded to this law firm.

Since National Benefit Life Insurance Company, as principal, is responsible for the acts of their agents under Oklahoma law, we shall expect immediate reimbursement for the amount extracted from the McLaughlins plus attorney fees, and your failure to act accordingly will be considered a bad-faith act which will necessitate the immediate initiation of legal action for both actual damages and punitive damages, a result which can well be anticipated.

In a letter of December 15, 1983, National Benefit responded: [14]

> Re: William H. and Nelly
> E. McLaughlin—Life
> Policy
> No. 1408490—
> Annuity
> No. 1408491–A—Life
> Policy
> No. 1408491

Dear Mr. Sellers:

This is in response to your letter of December 8, 1983 concerning the above captioned policies. National Benefit Life Insurance Company has not received from your clients $6,800.00. We have received $2,482.79 representing payments for the above captioned policies. Those payments include a check for $250.00 to which you refer.

It is unclear to me whether the request in your letter for a return of payments is intended as a request to terminate the policies currently inforced [sic]. If so, please send a letter to us specifially [sic], requesting termination and we will refund to you the $2,482.79 paid by your clients.

You allege in your letter that additional policies were applied for by your clients and that additional premiums were paid. We have received neither. However, we stand ready to honor any legally binding commitments made by our former agent on our behalf. Accordingly, if you will provide us with evidence that applications were signed and given to our agent for forwarding to us and that premiums were paid, we will return your client's payments as you have requested.

Thus far the only evidence of additional payments we have received is a copy of a check payable to Capital Dynamics, Inc. Since Roger Hilst and Capital Dynamics represented many insurance companies, that check is no indication that your client intended it as payment of premiums on a National Benefit policy. In fact, our application indicates that checks should be made payable to National Benefit and not to our agent. Therefore, the check made payable to Capital Dynamics seems to indicate that your clients intended the check to be used for some other purpose.

It is my hope that you will provide us with additional documentation to support your allegations. In the event, will be happy to honor your request.

14. Defendant's Trial Exhibit # 6.

The evidence before the trial court shows the existence of a legitimate controversy as to National Benefit's liability for the amount of money claimed due them by the McLaughlins. In the absence of evidence to show that National Benefit's actions were tainted by oppression, fraud, malice or gross negligence there was no basis for the submission of the punitive damage issue to the jury. Here the evidence presented by the McLaughlins fails to meet the standards set forth in *Galt–Brown.*

## III.

Because we find the Court of Appeals' initial memorandum in this case to have been correct in its disposition of the matter, we now, grant certiorari, VACATE the Court of Appeals' Order Granting Rehearing and REINSTATE the Court of Appeals' Memorandum Opinion affirming the judgment of the trial court.

DOOLIN, C.J., LAVENDER, SIMMS, OPALA and SUMMERS, JJ., concur.

HODGES and WILSON, JJ., concur in Part I; dissent from Part II.

HARGRAVE, V.C.J., dissents.

KAUGER, J., disqualifies.