David Lee WILLIS, Plaintiff–Appellant,

v.

**MIDLAND RISK INSURANCE COMPANY, Defendant–Appellee,**

and

Rogers County Insurance Agency, Defendant.

No. 92–5147.

United States Court of Appeals, Tenth Circuit.

Dec. 12, 1994.

608

Galen L. Brittingham of Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, OK (Michael P. Atkinson and Leigh Reaves with him, on the brief), for plaintiff-appellant.

Stephen L. Wilkerson of Knight, Wilkerson & Parrish, Tulsa, OK, for defendant-appellee.

Before BALDOCK, HOLLOWAY and BRORBY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellant David Lee Willis (Willis) brought this diversity action against defendant-appellee Midland Risk Insurance Company (Midland) for breach of an insurance contract and for tortious breach by the insurer of its implied covenant of good faith and fair dealing with its insured. On the latter claim, Willis sought both actual and punitive damages. The parties agree that Oklahoma law controls. Joint Pretrial Memorandum at 1, App. at 296.

The parties filed cross-motions for summary judgment on both the contract and tort claims. Prior to the district court's hearing on the motions, the parties settled the contract claim. The court then granted summary judgment in favor of Midland on the tort claim, thus denying both actual and punitive damages on that claim. Willis has appealed the denial of both actual and punitive damages on the tort claim.

## I

### The Factual Background

This action arises from Midland's refusal to indemnify or defend Willis on a claim made against him for property damage resulting from a construction accident involving Willis' Caterpillar loader. Like the district court, in deciding whether there were genuine issues of material fact, we must view the record in the light most favorable to the party opposing the motion for summary judgment. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). With this in mind, we note that there is record support for the following facts, most of which are undisputed.

### A. The Insurance Transactions

Midland denied coverage for the accident on the basis of a "designated operations exclusion" in its policy issued to Willis. Midland argues that this exclusion limited coverage to the location originally identified in the application for insurance. Willis maintains that this per job exclusion was not in force at the time of the accident because that exclusion was never communicated to Willis; the

binder sent to him did not contain such an exclusion; and the policy which did include the exclusion was not given to Willis until after the accident and after the claim was made. Joint Pretrial Memorandum at 2. Willis alleged that Midland's denial of coverage and its refusal to indemnify or defend him constituted bad faith.

The coverage at issue was purchased on June 7, 1990, by Carolyn Willis, plaintiff's wife, who went to Rogers County Insurance Agency (Rogers Agency) to secure a general liability policy and a certificate of insurance to present to Scott Construction Company as verification of insurance coverage so that her husband could begin work on the Litchfield housing addition in south Tulsa. For a thirty-day policy with liability limits of $100,000 for property damage and bodily injury, Mrs. Willis paid a premium of $457.92. App. at 178.

Willis' anticipated job with Scott Construction apparently was delayed, but he had an opportunity to work for American Airlines. In order to demonstrate to American that Willis' loader was insured, Mrs. Willis went to the Rogers Agency again on June 7 (or in any event not later than June 11) to obtain another certificate of insurance, this one for American instead of Scott Construction.

Becky Rohr, an employee of the Rogers Agency and a licensed insurance agent, took the application from Mrs. Willis and prepared both certificates of insurance at her request. Neither Rohr nor the Rogers Agency had authority to issue policies for Midland. Therefore, when the request for insurance was made, Rohr contacted Joel Stinson, who did have such authority. Stinson was an underwriter for LGI Surplus Lines, Inc., who bound coverage for Midland to Willis. Answer Brief of Appellee Midland Risk Ins. Co. at 2. It appears that Midland had arrangements with several related companies to perform such tasks as underwriting and claims handling. Because there is no dispute that all employees of these companies were acting as authorized agents for

Midland with respect to the events in question, we will simply refer to such employees as if they were direct employees of Midland. Similarly, it appears to be undisputed that Rohr and the Rogers Agency are to be considered as agents for Midland with respect to the relevant events. See 36 Okla.Stat. § 1423(A) (1991). Coverage for Willis' loader was orally bound by Joel Stinson, acting for Midland, based on the information relayed to him by Rohr.

Stinson apparently instructed Rohr to ascertain the location where Willis would be working. Although Stinson testified, in deposition, that he did so because the coverage would be restricted to that location, Rohr testified that she did not understand that coverage would be so restricted and that she therefore did not inform Willis of this restriction. App. at 57, 64, 67–68. Consequently, when Carolyn Willis returned to the Rogers Agency to request the second certificate of insurance for the American Airlines work, Rohr did not inquire where this work was to be performed. It seems clear that a permissible inference from this evidence is that Rohr knew that this job would be at a different location but did not regard that as significant since she did not know that the policy to be issued would be restricted to the original location.

The certificate Rohr gave Willis for American showed an effective date of June 7, 1990, on a general liability policy. App. at 94. Nothing on the certificate indicated that the policy being issued was limited to a particular location.[1] Midland issued a temporary written binder for the loader on June 12, 1990, which stated it was effective at 1:45 p.m. on June 7, 1990, and that it would expire at 12:01 a.m. on June 20, 1990. Id. at 106, 179. The written binder did not contain any restriction as to location, nor did it identify any endorsements that would be a part of the policy when issued. Id. at 106–07. The binder did include this statement: "[T]his insurance is subject to the terms, conditions and limitations of the policy(ies) in current

---

1. The certificate of insurance stated:
   This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not

amend, extend or alter the coverage afforded by the policies below.
App. at 94.

use by the Company." *Id.* at 107, 180. The policy was issued after the accident which caused the loss at issue here and was not delivered to Willis until sometime after July 11, 1990. *Id.* at 62–63. The location restriction on which Midland based its decision to deny coverage and on which it now relies is contained in endorsement no. N 092 to the policy as it was issued.

## B. The Coverage Dispute

The same day that the written binder was issued, June 12, 1990, Willis was involved in an accident at the American site. This was five days after the effective date of the coverage stated on the binder, which was noted earlier. Willis notified Midland of the accident.[2] Midland delegated responsibility for the handling of the Willis claim to Linda Rountree. According to her deposition testimony, Rountree knew that the binder had been issued to Willis without any mention of the designated operations exclusion. *Id.* at 88–89. She also knew that Rohr had issued two certificates of insurance that were for different locations.

Rountree hired Berryhill & Associates to investigate Willis' claim. Berryhill assigned the investigation to Jamie Pendleton. In retaining Berryhill, Rountree specifically requested investigation into three issues, one of which was what communications had occurred between Willis and the Rogers Agency regarding the location restriction. *Id.* at 84. However, Pendleton did not ask Willis about that topic, nor did he contact Rohr. *Id.* at 96. Pendleton later said that he "would want to know the nature and extent" of conversations between the insured and the soliciting agent as part of an adequate investigation. *Id.* at 101. The total time of the investigation, as reflected by the time billed, was one hour. *Id.* at 85, 321.

Rountree accepted Pendleton's report and made the decision to deny coverage without any information as to what Willis might have been told about any location restriction for his coverage in his and his wife's conversations with Rohr. Based on the brief investigation made by Pendleton and the language of the policy, Rountree denied coverage to the third party claimants on July 13 and to Willis on July 17, 1990. *Id.* at 60, 274. The reason given for the denial was that the designated operations exclusion limited coverage to the Litchfield housing addition, which Mrs. Willis had specified on her first visit to the Rogers Agency on June 7.

Claims were made against Willis for damages caused by the accident involving his loader. Willis again requested help from his insurer. He contacted Rountree in February of 1991. Rountree had a telephone conversation with Chuck Fraley at the Rogers Agency, who had executed the certificates of insurance. Rountree noted in her file Fraley's comment that, "[L]oss was not covered, but some good attorney would probably force the issue. We will need to inspect." *Id.* at 92. The record does not indicate that Rountree undertook any further investigation at that time. Coverage was again denied, apparently based on the designated operations exclusion. *Id.*

## C. The Damage Suits and Resulting Insurance Litigation

On November 4, 1991, Willis brought the instant federal suit against Midland for breach of contract and for breach of the implied covenant of good faith and fair dealing. He sought actual damages for his liability stemming from the accident, harm to his business reputation, mental pain and suffering "as a direct result of Defendant's egregious conduct in failing to properly investigate this claim" and in "forcing Plaintiff to be subjected to defending the underlying State Court action at his own expense, to the detriment of Plaintiff's business." Complaint, App. at 4–5.[3] Willis sought attorney fees for

---

2. Apparently Willis notified the company on June 12 or 13, as the claim was being discussed at the company on June 13. App. at 250, 266, 268.

3. The record indicates that Willis was sued in state court on July 9, 1991, although it is unclear whether this was the only suit brought against him as a result of the accident. *Id.* at 21. Other

than the initial pleading from that action, the only facts about the state court litigation found in the record come from oral representations made at the hearing on the motions for summary judgment in the instant federal suit. It appears that the state court suit had been brought by another insurance company under its subrogation rights

pursuing the instant case and punitive damages.

Willis and Midland filed cross-motions for summary judgment in the instant federal case. Because they settled the contract claim arising from the accident and the coverage controversy before the federal summary judgment hearing, only the tort claim seeking actual and punitive damages remained for decision below. On the tort claim, the district court granted summary judgment in favor of Midland on the ground that a reasonable dispute existed over whether Midland would be liable for payment of the claims. The court found that there had been a misunderstanding between Rohr and Stinson which did not rise to the level of unreasonableness necessary to support a bad faith claim giving rise to punitive damages. The judge also found that there was no breach of the implied covenant of good faith and fair dealing. "Even taking all of Willis' allegations as true, Willis has not provided evidence to show that Midland's conduct constituted fraud, oppression, gross negligence or malice." *Id.* at 343.

# II

## Analysis

### A. Standard of Review

We review summary judgment decisions de novo, applying the same standards as those employed by the district court under Fed.R.Civ.P. 56(c). *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of

law." *Id.; Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

### B. The Tort of Bad Faith Breach of Contract Under Oklahoma Law

The Oklahoma Supreme Court recognized the tort action available against an insurer for a breach of the duty to act fairly and in good faith in *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okla.1977).[4] The court held:

> We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought.

*Id.* at 904. The tort of bad faith does not foreclose the insurer's right to deny a claim; an insurer clearly has the right to resist payment and litigate any claim to which it has a reasonable defense. *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla.1991); *Manis v. Hartford Fire Ins. Co.,* 681 P.2d 760, 761 (Okla.1984).

▆ A claim must be paid promptly unless the insurer has a reasonable belief that

---

and that the state court action was settled later in conjunction with the settlement of Willis' contract claim against Midland in federal court.

4. In *Christian,* the court noted that previous holdings had imposed on insurers the duty of good faith and fair dealing, the breach of which could result in liability in excess of policy limits. 577 P.2d at 902 (citing *American Fidelity & Cas. Co. v. L.C. Jones Trucking Co.,* 321 P.2d 685 (Okla.1958); *National Mutual Cas. Co. v. Britt,* 203 Okla. 175, 200 P.2d 407 (1948)). However, *Christian* broke new ground by recognizing an

action in tort for bad faith breach of the previously imposed duty. The insurance policy involved in *Christian* was a disability policy. Subsequently, the Oklahoma Supreme Court held that the tort of insurer bad faith defined in *Christian* applied to all types of insurance. *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 588 (Okla.1981). Thus, it is beyond dispute that a bad faith action may lie with respect to "third-party" insurance such as the general liability coverage involved in this case. *Timmons v. Royal Globe Ins. Co.,* 653 P.2d 907, 911–12 (Okla. 1982).

the claim is legally or factually insufficient. *Buzzard*, 824 P.2d at 1109. The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that there was a justifiable reason for withholding payment under the policy. *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla.1987). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances." *Buzzard*, 824 P.2d at 1109. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable. The essence of the tort of bad faith by an insurer is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

*McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla.1981).

■ However, the mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit the issue to a jury for determination. *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla.App.1990). On a motion for summary judgment by the insurer, the court must first determine, under the facts of a particular case and as a matter of law, whether the insurer's conduct may be reasonably perceived as tortious. *Id.; Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436–37 (10th Cir.1993) (applying Oklahoma law). "Unless the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Oulds*, 6 F.3d at 1437.

### C. Application of Bad Faith Law to Willis' Claim for Actual Damages

■ To determine whether an inference of bad faith is permissible, we must evaluate

Midland's actions to judge (1) the reasonableness of the insurer's actions in light of the law applicable to the claim at the time of denial, *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 914 (Okla.1982), and (2) the facts Midland knew or should have known at the time (or times) that Willis requested the company to perform its contractual obligations. *See Oulds*, 6 F.3d at 1437 (*citing Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1362 (Okla.1989)).

■ In moving for summary judgment Midland relied on the binder's incorporation by reference of the "terms, conditions and limitations of the policy(ies) in current use by the Company." Midland also submitted an affidavit from its agent Stinson stating that "in the industry ... generally, thirty day general liability policies of this nature ... are for certain specific designated locations...." App. at 140. The district court did not specifically find that the location restriction was one of the terms of the general liability policy in use by Midland at the time. Stinson's assertion is of questionable legal effect because the location restriction was contained in an endorsement. Oklahoma statutory law provides that a binder "shall be deemed to include all the usual terms of the policy ... *together with such applicable endorsements as are designated in the binder*...." 36 Okla.Stat. § 3622(A) (1991) (emphasis added). Here the binder did not designate any endorsement. *See Gifford v. Western Aviation Insurance Group*, 77 Or. App. 645, 713 P.2d 1085, 1088 (1986) (under statute similar to that of Oklahoma, endorsement's exclusion not included in the binder, which exclusion first appeared in a policy issued after the accident, was not enforceable against the insured).

■ The insurer is held to knowledge of the applicable Oklahoma law, and the reasonableness of its decision must be judged in light of that law. *Timmons*, 653 P.2d at 913–14. As the Oklahoma law cited shows, Midland's denial of the claim was not based on a reasonable understanding of Oklahoma law governing binders. *See Midwestern Insurance Co. v. Rapp*, 296 P.2d 770, 777–79 (Okla. 1956); *Republic Insurance Co. v. French*,

180 F.2d 796, 798 (10th Cir.1950) (applying Oklahoma law on binders). For example, the Oklahoma Supreme Court has held that an insurer could not avoid liability on a binder by relying on the agent's purported intent not to bind the coverage, when "this intent was not conveyed to the [insureds]." *Poteete v. MFA Mutual Insurance Co.*, 527 P.2d 18, 20 (Okla.1974).

■ It is well-established under Oklahoma law that an insurance soliciting agent may bind an insurance company by acts, agreements, and representations properly made in connection with an application for insurance. *Warner v. Continental Cas. Co.*, 534 P.2d 695, 698 (Okla.App.1975). *See Farmers Educational & Cooperative Union of Amer. v. Bell*, 366 P.2d 765, 766–67 (Okla.1961) (soliciting agent can bind his company in matters pertaining to the taking and preparation of applications for insurance); *Commonwealth Life Ins. Co. v. Hutson*, 271 P.2d 722, 724 (Okla.1954) (company was bound by its soliciting agent's representation that new baby was automatically included in policy); *Globe & Rutgers Fire Ins. Co. v. Roysden*, 258 P.2d 644, 646–48 (Okla.1953) (provision of policy, which limited coverage to $100 for property located somewhere other than the premises specified in policy, did not apply where soliciting agent indicated to insured that moving his furniture would not affect coverage).

In sum, the evidence outlined above bears on the first prong of the test for a possible bad faith claim: the reasonableness of the insurer's actions in light of the law applicable at the time of denial of the insured's claim. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d at 914. That proof leads us to conclude that a sufficient showing on the bad faith issue was made under the applicable law to survive Midland's motion for summary judgment.

We must next consider the reasonableness of Midland's actions in light of the facts that Midland knew or should have known at the time when Willis requested performance of Midland's contractual obligations and coverage was denied. *See Oulds Principal Mut. Life Ins. Co.*, 6 F.3d at 1437. Although the evaluation centers on the time of denial, the entire course of conduct between the parties is relevant to the question whether the insur-

er acted in good faith. *Timmons*, 653 P.2d at 917. Thus, an inadequate investigation may give rise to a reasonable inference of bad faith by the insurer. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 570–72 (Okla.1992); *Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 815–16 (10th Cir. 1993).

There is evidence that Midland's investigation consisted only of taking a statement from Willis about the location of the accident and an examination of the terms of the policy issued after the accident. Although the claims supervisor, Rountree, knew that when the accident occurred Willis had not received the policy containing the designated operations limitation, that the binder contained no such limitation, and that two certificates of insurance had been issued, she denied Willis' claim without seeking information about what representations the producing agent, Rohr, might have made to Mrs. Willis when she purchased the insurance. There was evidence that Rountree did not investigate why the location of the accident was different than that listed in the policy.

In addition, even when Willis brought Rountree's attention to the fact that Midland's soliciting agent, Rohr, an employee at the Rogers Agency, issued two certificates of insurance for different locations, and that he needed assistance in defending a claim made against him, Rountree again denied the claim based solely on the designated operations exclusion. Rather than investigate the matter, it appears that Rountree decided simply to maintain the position that there was no coverage for the loss because it occurred at a location other than the one designated in the policy. This evidence could also give rise to an inference of bad faith. *See State Farm Fire & Cas. Co. v. Barton*, 897 F.2d 729, 731–32 (4th Cir.1990) (evidence that insurer used investigation to support denial of claim, rather than attempting to learn the truth of fire's origin, supported jury verdict of bad faith and punitive damages) (Powell, J.).

■ Midland argues that the issue of what location or locations were covered by the policy was a legitimate dispute which could not give rise to an inference of bad faith.

Brief of Appellee at 10. The trial court agreed with Midland on this issue. The district judge focused on the "miscommunication" between Rohr and Stinson, which resulted in Rohr being unaware that the policy would be issued with coverage limited to a single location. The court then concluded that the miscommunication between Rohr and Stinson was "at best," a "good-faith misunderstanding ... that was passed on to Willis." Order at 6. This argument does not support a defense for Midland. As we have noted, the evidence indicated that Rohr was acting as *Midland's* soliciting agent, and Stinson served as an underwriting agent for Midland. Any misunderstanding between two representatives of the insurance company clearly cannot exonerate the company from liability for a breach of its duty of good faith to its insured. *Cf. Gill v. Waggoner,* 65 Wash.App. 272, 828 P.2d 55 (1992) (enforcing settlement agreement with plaintiff despite misunderstanding between employees of the defendant insurance company on terms of settlement).

■ The evidence was clear that Rohr did not understand that coverage was to be limited to the original location. If she, by her words or conduct, led Willis to believe that there was no such limitation—and we believe that such an inference could be drawn, as for instance from Rohr's issuance of the American Airlines certificate—then Midland is bound by the implication of such words and conduct.[5] Further, the evidence indicates that the claims supervisor, Rountree, was not aware of any misunderstanding between Rohr and Stinson when she denied the claim because her investigator never contacted Rohr, nor did he ask Willis what he had been told about the coverage. Thus, it could be reasonably found that Midland's lack of knowledge was due to an inadequate investigation.[6] Accordingly, a jury could conclude that the coverage had been misrepresented and that the legal effect of such misrepresentation would preclude Midland's reliance on the location restriction contained in the policy which was not delivered to Willis until one month after the accident.

The Oklahoma courts have recognized that there can be disagreements between an insurer and its insured on a variety of matters such as the insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. *See Manis,* 681 P.2d at 761; *McCorkle,* 637 P.2d at 587. The error in Midland's argument is that it does not take into account either its questionable legal position on the designated location exclusion, or the substantial evidence of inadequacy of its investigation; Willis presented evidence concerning the investigation of the claim from which a jury could reasonably conclude that the insurer acted in bad faith in conducting the investigation.

In sum, Willis should have been permitted to submit to a jury his claim for actual damages resulting from Midland's alleged breach of the covenant of good faith and fair dealing.

### D. Punitive Damages

Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, submission of the issue of punitive damages to a jury may be improper. *McLaughlin v. National Benefit Life Ins. Co.,* 772 P.2d 383, 385, 387, 389

---

5. Midland cites Rohr's deposition testimony indicating she believed she had been "misled" by Carolyn Willis when Willis requested the American Airlines certificate without expressly stating that American Airlines was not involved in the residential development at the Litchfield addition where David Willis originally had planned to work for Scott Construction Company. App. at 258–59. The district court did not cite this testimony, nor do we think this testimony could have aided Midland's motion for summary judgment. Rohr's testimony at best raises questions of fact. Rohr's testimony contains a significant contradiction. She testified that on June 13 she told Carolyn Willis, on the telephone, that "I didn't write coverage on any other job sites...." App. at 261. However, Rohr also testified that she herself was not aware that the policy to be issued would limit coverage to the original location until she talked with David Stinson, also on June 13 but *after* she had spoken with Carolyn Willis. *Id.* at 261–62. Clearly, reasonable inferences could be drawn from this testimony that would not favor Midland, and such questions must be resolved by the trier of fact.

6. Although Willis stresses his claim of inadequacy of the investigation, Midland does not address the issue at all in its brief.

(Okla.1988). Breach of an insurer's duty to deal fairly and to act in good faith "gives rise to an action in tort for which consequential, and in a proper case, punitive, damages may be sought." *Christian,* 577 P.2d at 904. But "[c]learly, punitive damages do not ipso facto follow from *every* breach of this duty or in *every* case [in which] a jury may render a verdict for the wronged party." *McLaughlin,* 772 P.2d at 385 (emphasis in original).

■ Under Oklahoma law, punitive damages may be awarded in addition to actual or compensatory damages only upon proof that a defendant "has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed...." 23 Okla. Stat. § 9(A) (1991).[7] The standard of proof necessary to sustain a punitive damage award in a bad faith case against an insurance company is the same as in any case where punitive damages are sought under the statute. *McLaughlin,* 772 P.2d at 387. Applying this standard to the present case, we find that the trial judge correctly held that there was insufficient evidence to support the submission of the question of punitive damages to the jury.

■ In *Slocum v. Phillips Petroleum Co.,* 678 P.2d 716, 719 (Okla.1983), the Oklahoma Supreme Court stated:

> To entitle a plaintiff to recover exemplary damages in an action sounding in tort, the proof must show some elements of fraud, malice or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's rights—as is deemed equivalent to such intent.

*Id.* at 719.

In *Timmons,* 653 P.2d at 916–17, the Oklahoma Supreme Court found ample evidence

to justify submission of the issue of punitive damages. There the plaintiff presented evidence that the adjuster falsified a report to negate coverage, the insurance company told the plaintiff that it would settle his claim if he dismissed his attorney, the company's investigator concealed his identity from the plaintiff, and the company knowingly obtained confidential information about the plaintiff without seeking his signature to authorize its disclosure. *Id.*

Here, by contrast, Willis has not presented any evidence of acts which were intentionally wrongful such as the deception and dishonesty in *Timmons.* In the absence of a showing of "oppression, fraud or malice, actual or presumed" (23 Okla.Stat. § 9(A) (1991)), it would be improper to submit the issue of punitive damages to the jury. Moreover, we note that the Oklahoma punitive damage statute provides that it "shall be strictly construed." 23 Okla.Stat. § 9(B) (1991). We agree with the trial judge that the evidence submitted here did not rise to the level that justified submission of the punitive damages issue to a trier of fact. Hence summary judgment for Midland on that issue was proper.

### III

Accordingly we **AFFIRM** the judgment of the district court as to punitive damages. We **REVERSE** and **REMAND** for trial of the claim for actual damages for violation of the duty of good faith and fair dealing.

---

**7.** Evidence meeting this standard of proof permits a jury to award, in addition to actual damages, damages for sake of example, and by way of punishing the defendant, in an amount not exceeding actual damages awarded. However, if at the conclusion of the evidence and before submission of the case to the jury, the court shall find on the record and out of the jury's presence

that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give punitive damages without the limitation to the amount of the actual damage award.