**DEVILLE COURT APARTMENTS, L.P., Plaintiff,**

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Defendant.**

**No. Civ.A. 96–551 MMS.**

United States District Court, D. Delaware.

Jan. 20, 1999.

Mark Minuti, and Scott J. Jensen, of Saul, Ewing, Remick & Saul LLP, Wilmington, Delaware, of counsel Mark E. Kogan, of Marion, Satzberg, Trichon, Kogan & Wertheimer, P.C., Philadelphia, Pennsylvania, for plaintiff.

Josy W. Ingersoll, and Janet Z. Charlton, of Young Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, for defendant.

## OPINION

SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") has moved for summary judgment against plaintiff Deville Court Apartments', a Delaware Limited Partnership ("Deville"), claim for damages arising from breach of contract. Freddie Mac argues that it is entitled to summary judgment because it did not breach a Loan Modification Agreement ("Agreement") when it asked for additional assurances to verify whether existing terms of the Agreement were met. In the alternative, Freddie Mac urges that if this Court were to find that it had breached the Agreement, it is not liable for damages because its actions were not the proximate cause of Deville's loss. This Court has federal question jurisdiction under 28 U.S.C. § 1331. For the reasons that follow, defendant's motion for summary judgment will be denied.

## II. FACTS

Deville is the owner of an apartment complex in New Castle County, Delaware which was encumbered by a note for $3.675 million held by Freddie Mac. On March 20, 1995, Deville and Freddie Mac executed the Agreement which entitled Deville to pay off the existing loan with Freddie Mac for a reduced amount if certain conditions were met. The most significant of these conditions was that the refinanced loan had to be recourse with the general partners being personally liable for the debt. On April 22, 1996, Deville presented a loan commitment ("first loan commitment") from PNC Bank ("PNC") to Freddie Mac which Deville believed satisfied the preconditions of the Agreement. However, because the first loan commitment stated that the loan would subsequently be transferred on a non-recourse basis, Freddie Mac informed Deville that

the first loan commitment would not satisfy the previously articulated conditions.

Subsequently, on May 15, 1996, Deville presented another commitment letter ("second loan commitment") identical to the first, but omitting any reference to a subsequent transfer. Because Freddie Mac's in-house counsel had concerns that there might be side agreement between Deville and PNC to eliminate all personal guarantees of the general partners, he requested further assurances as to the bona fides of the second loan commitment. Specifically, he stated in his June 11, 1996 letter:

> ... When the information described in Paragraph B below is provided and Freddie Mac is satisfied from its review of the PNC appraisal that the financial information provided by the Borrower to Freddie Mac prior to the execution of the modification was accurate, Freddie Mac will promptly furnish a payoff statement to be determined according to the formula described in Paragraph A below which payoff will be subject to the conditions set forth in paragraph B below:

> B. CONDITIONS TO RECOURSE PAYOFF

> The Recourse Payoff is expressly conditioned upon receipt by Freddie Mac of the following: (1) a copy of all of the fully executed loan documents evidencing the PNC Loan, including but not limited to copies of the executed note, mortgage and any agreement relating to the future transfer of the PNC Loan to Citicorp or its conduit or any other lender; (2) an affidavit executed under penalty of perjury by all of the partners of the Borrower stating the following: (1) that the documents executed by the general partners of the Borrower in connection with the PNC Loan are all of the documents evidencing the PNC Loan and any agreement to transfer such PNC Loan to Citigroup or its conduit or any other lender and (ii) that the general partners of the Borrower after the

refinance are unconditionally personally liable for the principal due under the PNC Loan in an amount equal or greater than the Minimum Payment, as defined in the Modification; and (3) a legal opinion from the Borrower's counsel in a form acceptable to Freddie Mac stating unconditionally that all of the general partners of the Borrower will be unconditionally personally liable for the principal due under the PNC Loan and that there are no commitments, understandings or agreements in writing or otherwise that the PNC Loan is to become non-recourse upon the transfer of the PNC Loan or some other event; (4) a copy of the appraisal used by PNC Bank to provide the commitment represented by the May 15, PNC letter, and (5) a copy of the financial statements for the Property submitted to PNC Bank in connection with Borrower's application for the PNC Loan.

Deville declined to provide Freddie Mac with the above stated assurances, asserting that these further assurances, which it called conditions, were not contained in the Agreement and therefore constituted a breach of the Agreement. The May 15, 1996 loan commitment was terminated by PNC Bank on June 14, 1996. Deville has alleged that the dispute with Freddie Mac was the cause of the termination and that it had suffered damages in the amount of $21,634.35, which represented additional bank and professional fees associated with cancellation of the original closing. Freddie Mac answers that PNC terminated the May 15 loan commitment, at least in part, because Deville did not timely resolve certain underground storage tank problems, which was a condition precedent to the closing of the loan.

## III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, the court may grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *See id.* When considering a motion for summary judgment, the court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan*, 122 F.3d 171, 176–177 (3d Cir. 1997). The Supreme Court has clarified that the moving party must "bear the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a demonstration has been made, however, the nonmoving party must go beyond the pleadings and, based on the same types of evidence, must demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The nonmoving party cannot rest on his allegations without "any significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See also Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (stating that a non-moving party must "adduce more than a scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings").

## IV. DISCUSSION

Freddie Mac argues: (1) it did not breach the Agreement when it asked for further assurances to verify compliance with terms of the Agreement; and (2) even if the Court where to find that it breached the Agreement, it is not liable for damages because its actions were not the proximate cause for Deville's loss.

## A. Freddie Mac did Breach the Terms of the Agreement

The Agreement contains a contractual term which provides in relevant part:

> *OTHER DOCUMENTS.* From time to time, Borrower shall execute or procure and deliver to Note holder such other and further documents and instruments evidencing, securing or pertaining to the Loan, or the Borrower's other obligations under the Loan Documents, as shall be reasonably requested by Note holder so as to evidence or effect the terms and provisions hereof.

This contractual term requires Deville to provide Freddie Mac with documents and instruments that are reasonably requested by it "so as to evidence or effect the terms and provisions of the Agreement." One of the provisions of the Agreement addresses refinancing. Therefore, Deville is required according to the contractual term to provide Freddie Mac with documents and instruments that it reasonably requests with respect to refinancing.

■ Alternatively *arguendo*, in the absence of the contractual term being applicable, the Court finds that an ambiguity exists as to whether Deville agreed to provide Freddie Mac with reasonable assurances regarding the terms of the refinancing. The primary goal of contract interpretation is to satisfy the reasonable expectation of the parties at the time they entered into the contract, a process which often requires a court to engage in an analysis of the intent or shared understanding of the parties. *See Supermex Trading Company, Ltd. v. Strategic Solutions Group, Inc.*, 1998 WL 229530 (Del. Ch.); *Demetree v. Commonwealth Trust Co.*, 1996 WL 494910 (Del.Ch.). In that context, overt statements and acts of the parties, the business context, prior deal-

ings between the parties, and business custom and usage in the industry will all be considered. *Bell Atlantic Meridian Systems v. Octel Communications Corp.,* 1995 WL 707916 (Del.Ch.).

If hypothetically Freddie Mac and Deville had discussed the issue of Freddie Mac being provided with reasonable assurances by Deville regarding any of the terms of the refinancing, Deville would have agreed to do so. Freddie Mac would have wanted to be able to seek further assurances to verify any terms of the refinancing. Deville would accede to the request to assuage any concerns that Freddie Mac might have because it too would want to accomplish its objective of being able to refinance the existing loan.

■ The pivotal issue then becomes whether Freddie Mac's "Conditions to Recourse Payoff" were reasonable. The threshold issue of reasonableness is appropriate for summary judgment. *See Willis v. Midland Risk Insurance Co.,* 42 F.3d 607, 612 (10th Cir.1994). Only if all of the conditions/assurances were reasonable, would Freddie Mac be entitled to summary judgment. There is no dispute as to the content of Freddie Mac's conditions/assurances stated in the June 11, 1996, letter by its in-house counsel to Deville. *Supra page* 430. The Court holds conditions B(2)(1) and B(3) of the letter are unreasonable. Condition B(2)(1) requires "an affidavit executed under the penalty of perjury by all of the general partners of the Borrower stating that the documents executed by the general partners of the Borrower in connection with the PNC Loan are all of the documents evidencing the PNC Loan and any agreement to transfer such PNC Loan to Citigroup or its conduit or any other lender." There is no way for Deville's general partners to state in an affidavit under the penalty of perjury that the document executed by them are *all of* the documents evidencing any agreement to transfer the PNC loan to Citigroup or any other lender. For all the general partners might know, there could have

been an agreement between PNC and another lender to transfer the loan. The general partners of Deville not being privy to business decisions solely within the knowledge and control of PNC could not reasonably be expected to sign an affidavit that there were no other documents evidencing a loan transfer other than those Deville executed with PNC.

Similarly, condition B(3) requires "a legal opinion from the Borrower's counsel in a form acceptable to Freddie Mac stating unconditionally that all of the general partners of the Borrower will be unconditionally personally liable for the principal due under the PNC Loan and that there are no commitments, understandings or agreements in writing or otherwise that the PNC Loan is to become non-recourse upon the transfer of the PNC Loan or some other event." Counsel could hardly provide such an opinion. Deville's counsel had no way to determine with absolute certainty that PNC did not enter into an agreement or have an understanding with another lender regarding a subsequent transfer of the loan.

Sensing the inherent difficulty with its position Freddie Mac proffered a last minute contention that it sought assurances only with regard to information which was within the personal knowledge of the Deville's general partners and legal counsel. The June 11, 1996, letter containing the "Conditions to Recourse Payoff" in no way purports to limit the obligation of Deville's general partner or legal counsel to provide information pertaining to matters within their personal knowledge. It is therefore not surprising that Freddie Mac has been unable to point to anything in the summary judgment record to support its last minute contention.

**B. Were Freddie Mac's Actions the Proximate Cause of Deville's Loss**

■ Freddie Mac argues that even if the Court where to find that it breached the terms of the Agreement by asking for further assurances, it is not liable for dam-

ages because its actions were not the proximate cause of Deville's losses. The burden is on Deville to establish the cause between the breach and the damage and if the loss caused by a breach cannot be isolated from that attributable to other factors, no damages may be awarded. *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 527 (3rd Cir.1978); *F.E. Myers Company v. Pipe Maintenance Services Inc.*, 599 F.Supp. 697 (D.Del.1984).

 The dispute between the parties that creates a triable issue of fact is whether the curing of the environmental problems was a condition precedent to the loan commitment or a condition precedent to the closing of the loan. The environmental problems pertained to testing of the storage tanks and the soil around them.

Freddie Mac urges that curing of the environmental problems was a condition precedent to the loan commitment. In support of its contention, Freddie Mac points to the testimony of assigned PNC loan officer, Jeffery Protzel. At his deposition, Mr. Protzel was questioned by counsel for Freddie Mac:

> Q. Did the loan referenced in the May 15th commitment as amended close?
>
> A. No
>
> Q. Do you know why not?
>
> A. As I recall, there were two reasons, one was the disagreement between Freddie Mac and the borrower, second being an environmental issue which needed to be cleaned up prior to—that we required to be cleaned up before *closing.* (Emphasis added)

Appendix to Brief in Support of Defendant's Motion of Summary Judgment (Docket Item 64) at A000101. There is dispute between the parties as to whether Mr. Protzel used the word *closing* to refer to closing of the loan or to closing of the loan commitment. Freddie Mac argues

that Mr. Protzel was referring to reasons why the loan commitment did not close and points to the above quote in Mr. Protzel's testimony as evidence that the unresolved environmental problems at the property caused Deville not to meet the closing deadline for the May 15, 1996 loan commitment.

Deville, on the other hand, urges that curing the environmental problems was a condition precedent to the closing of the loan. In support of its assertion, Deville also points to Mr. Protzel's deposition in which he states that PNC terminated the May 15 loan commitment because "we weren't willing to wait any longer." Deville further contends it would have corrected the environmental problems before closing. Ralph Saulino, a general partner of Deville, by affidavit stated that the reason Deville did not cure the environmental problems before the termination of the commitment was because: (1) it was not a condition precedent to the loan commitment;[1] and (2) Freddie Mac failed to provide the payout figure essential to securing the loan commitment from PNC, and Deville was unwilling to expend money to cure the environmental problems without first securing the loan commitment.

There is a genuine issue of material fact as to whether Freddie Mac's failure to provide the pay off figure caused Deville's loss. Accordingly, an order will be entered denying Freddie Mac's motion for summary judgment.

---

1. In his affidavit Mr. Saulino stated: "Under the terms of the commitment, the storage tank repair was a condition of closing; it was not a condition of the loan commitment."