[No. 11128-8-III. Division Three. April 21, 1992.]

ROY K. GILL, ET AL, *Respondents*, v. JOSEPH WAGGONER, ET AL, *Defendants*, CALIFORNIA STATE AUTOMOBILE ASSOCIATION, *Appellant*.

*W. Matt Murray, Jeffory E. Adams*, and *Murray, Dunham & Murray*, for appellant.

*Harvey Faurholt*, for respondents.

SWEENEY, J. — Roy K. Gill was a passenger in a vehicle which was rear-ended by an insured driver of California State Automobile Association (CSAA). Mr. Gill demanded $37,156 from CSAA to settle his claim for the neck and back injuries suffered in the accident. CSAA offered $35,000. Mr. Gill accepted. A few days later, CSAA told him there had been a mistake and attempted to withdraw the offer. Mr. Gill brought this action to enforce the agreement. The court granted Mr. Gill's motion for summary judgment. CSAA appeals. We affirm.

## FACTUAL BACKGROUND

Mr. Gill was a passenger in a vehicle rear-ended by a CSAA insured. The accident occurred in Nevada. Mr. Gill is a Washington resident. He was treated at a hospital emergency room, where he was given pain medication and released. Pain in his neck and shoulders persisted. Following his return to Washington, he was examined by a physician who ordered x-rays, prescribed pain medication and recommended physical therapy. His physician reported that: "Mr. Gill has osteoarthritis of the neck. On a more probable than not basis, this was aggravated by the auto accident in Nevada . . .". He concluded Mr. Gill "will have these neck pains for the rest of his life." Mr. Gill incurred about $2,000 in medical bills. He filed a claim with CSAA.

CSAA hired Joseph Waggoner, a local independent insurance adjuster, to assist in processing Mr. Gill's claim. CSAA authorized Mr. Waggoner to offer $3,500 to settle the claim. Mr. Gill rejected the offer and retained an attorney who demanded $37,156. CSAA told Mr. Gill it could not make a decision on his claim until he submitted to an independent medical examination by a doctor selected by CSAA. Mr. Gill cooperated and was examined by Dr. H.H. Hendricks. Dr. Hendricks concluded Mr. Gill suffered from a preexisting

condition of cervical and lumbosacral spondylosis "which was made much more symptomatic and aggravated by the [Nevada] injury . . .". Dr. Hendricks recommended further diagnostic tests which CSAA declined to approve. CSAA refused to furnish Dr. Hendricks' report to Mr. Gill.

CSAA assigned responsibility for Mr. Gill's claim to a newly hired adjuster, Paula Johnson. She had no experience in adjusting or evaluating claims. On March 12, 1990, Mr. Waggoner telephoned Ms. Johnson and told her Mr. Gill wanted a response to his $37,156 offer by the end of the day. She instructed Mr. Waggoner to obtain an extension of time to review the file. On March 14, she discussed the matter with her supervisor; he said "go ahead and offer the '35'." Ms. Johnson assumed the supervisor was authorizing a $35,000 offer and instructed Mr. Waggoner accordingly.

On March 14, Mr. Waggoner called Mr. Gill's attorney and communicated the $35,000 offer. Mr. Waggoner encouraged its acceptance and described the offer as "take it or leave it". Mr. Gill met with his attorney on March 15 and decided to accept the settlement rather than proceed with an action in Nevada. Mr. Gill's attorney called Mr. Waggoner, accepted the offer and on March 16 confirmed the agreement by letter. Mr. Waggoner acknowledged receipt of the letter and the agreement. After CSAA discovered its error, Ms. Johnson called Mr. Waggoner and instructed him to withdraw the offer. Mr. Waggoner called Mr. Gill's attorney, told him the offer was withdrawn, but advised that CSAA was willing to reopen negotiations.

Mr. Gill sued to enforce the agreement. Both parties moved for summary judgment. Mr. Gill claimed the parties entered into a valid $35,000 settlement agreement; CSAA claimed the agreement was based on a mistake. CSAA further claimed that enforcement of the agreement would be unconscionable.

At the invitation of the parties, the court decided the summary judgment motions on the basis of Restatement (Second) of Contracts §§ 153, 154 (1981). The trial court ruled CSAA's miscommunication was a "judgment or opinion"

call. Alternatively, the court ruled that if the settlement was the result of a unilateral mistake, its enforcement would not be unconscionable and the plaintiff had no reason to know of the mistake. The court allocated the risk of the error to CSAA because it was CSAA's business to collect premiums, invest money, and evaluate and settle cases. The propriety of the summary judgment is the sole issue on appeal.

## STANDARD OF REVIEW

■ ■ On review of a summary judgment, this court engages in the same inquiry as the trial court. *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 855, 816 P.2d 75 (1991). A summary judgment should be granted only if the pleadings and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Meaney v. Dodd*, 111 Wn.2d 174, 177-78, 759 P.2d 455 (1988); *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 567, 731 P.2d 497 (1987), *overruled on other grounds in Phillips v. Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989). A material issue of fact is one upon which the outcome of the litigation depends, in whole or in part. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). Considering the evidence in a light most favorable to CSAA, we find no genuine issue of material fact. *Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

## UNILATERAL MISTAKE

■■ One party to a contract is not liable if the contract is based on that party's unilateral mistake and the other party to the contract knows of or is charged with knowledge of the mistake. *Basin Paving, Inc. v. Port of Moses Lk.*, 48 Wn. App. 180, 185, 737 P.2d 1312 (1987); *Appleway Leasing, Inc. v. Tomlinson Dairy Farms, Inc.*, 22 Wn. App. 781, 784, 591 P.2d 1220 (1979). A mistake is a belief not in accord with the facts. *Simonson v. Fendell*, 101 Wn.2d 88, 91, 675 P.2d 1218 (1984) (citing Restatement (Second) of Contracts § 151 (1981)).

CSAA argues that Mr. Gill suffered only minor injuries and that he knew or should have known a $35,000 offer was excessive because its offer went from $3,500 to $35,000 in one step. Mr. Gill was not privy to CSAA's discussions regarding his claim and therefore did not have actual knowledge of its mistake. Should Mr. Gill be charged with knowledge of the mistake? We think not.

CSAA's initial $3,500 settlement offer was made before Mr. Gill retained an attorney. When CSAA offered $3,500, Mr. Gill's medical expenses totaled about $2,000. He believed the offer was "outrageous" since it barely covered his out-of-pocket expenses. Mr. Gill submitted to an independent medical examination at CSAA's request. CSAA then refused to provide him with a copy of the results. He did not learn the report supported his injury claim until after he accepted CSAA's offer. When Mr. Waggoner communicated the offer, he did not suggest it was unreasonable. He said the offer was a good resolution of the matter.

The offer was less than Mr. Gill demanded. He was motivated to accept because he faced the prospect of court proceedings in Nevada. His complaint of continued pain is supported by the medical reports of both his treating physician and Dr. Hendricks. Mr. Gill could reasonably have come to the conclusion that CSAA evaluated his claim at $35,000. He demanded $37,156 to settle the claim; an offer of $35,000 would not put him on notice of a mistake.

We reject CSAA's analogy to construction cases involving mathematical errors in bids. *Peter Kiewit Sons' Co. v. Department of Transp.*, 30 Wn. App. 424, 635 P.2d 740 (1981); *La Conner v. American Constr. Co.*, 21 Wn. App. 336, 585 P.2d 162 (1978), *review denied*, 91 Wn.2d 1023 (1979). Mathematical errors can be detected with certainty. In contrast, Mr. Gill could not discover the mistake by reviewing CSAA's offer. A party settling a claim with an insurance company is not charged with a duty to inquire whether the amount offered is a mistake. *See Appleway Leasing, Inc. v. Tomlinson Dairy Farms, Inc., supra.*

CSAA claims the settlement agreement should not be enforced because it is unconscionable, citing *Buck v. Equitable Life Assur. Soc'y of the United States*, 96 Wash. 683, 165 P. 878 (1917). We disagree.

██ An unconscionable contract is one which "no man in his senses, not under delusion, would make . . . and which no fair and honest man would accept . . .". *Montgomery Ward & Co. v. Annuity Bd.*, 16 Wn. App. 439, 444, 556 P.2d 552 (1976) (quoting *In re Greer*, 61 Wn.2d 741, 749, 380 P.2d 482 (1963)). Whether particular facts render an agreement unconscionable is a question of law. *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 328, 814 P.2d 670 (1991). The settlement agreement between CSAA and Mr. Gill is not "shocking to the conscience" or "exceedingly calloused". *Montgomery Ward*, at 444. We agree with the trial court; the settlement agreement is not unconscionable.

Nor do we find CSAA's reliance on *Buck v. Equitable Life Assur. Soc'y* persuasive. There, the court held Mr. Buck was sufficiently knowledgeable about insurance to appreciate a mistake concerning his policy's higher than usual cash surrender value. Mr. Buck told other insurance agents about his policy's "unusual" value. When they did not believe him, "[Mr. Buck] made a wager with them and exhibited the policy." *Buck*, at 685. He refused to submit his policy for correction. In contrast, Mr. Gill did not know of the mistake or refuse to cooperate. He had no expertise in insurance and had no reason to know of CSAA's in-house miscommunication.

### RESTATEMENT OF CONTRACTS

The court concluded CSAA bore the risk of the mistake pursuant to Restatement (Second) of Contracts § 153:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, *the contract is voidable by him if he does not bear the risk of the mistake . . .*, and
> (a) the effect of the mistake is such that *enforcement of the contract would be unconscionable*, or

(b) *the other party had reason to know of the mistake or his fault caused the mistake.*

(Italics ours.) While it is "reasonable under the circumstances" to allocate the risk of mistake here to CSAA, the analysis is unnecessary. Restatement (Second) of Contracts § 154. *Basin Paving* and *Appleway Leasing* require only that a party seeking to enforce an agreement not be chargeable with knowledge of the unilateral mistake.

The trial court properly granted Mr. Gill's motion for summary judgment.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.