IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RICHARD LIONEL DYSON, an individual, | ) ) ) | No. 77358-5-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| WAL-MART STORES, INC., a Delaware Corporation, | ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) ) | |
| BROADWAY 32ND STREET REALTY CORP., a New York Corporation, | ) ) ) | |
| Defendant. | ) | FILED: March 25, 2019 |

SCHINDLER, J. — Richard Dyson appeals summary judgment dismissal of his personal injury lawsuit against Wal-Mart Stores Inc. We reverse and remand for trial.

## FACTS

On May 13, 2014, Richard Dyson was riding his bicycle in a parking lot in the Federal Way Rainier View Plaza shopping complex. The front tire of his bicycle hit a pothole. Dyson fell forward, injuring his wrist, hand, ankle, and back and breaking two teeth. Dyson notified Broadway 32nd Street Realty Corporation (Broadway) and Wal-Mart Stores Inc. Broadway owns the Rainier View Plaza property. Wal-Mart store 2571 is located at 1900 South 314th Street in the Rainier View Plaza.

On March 3, 2015, Broadway sent a letter to Wal-Mart with a copy to Dyson. Broadway states it investigated the bicycle accident and confirmed Wal-Mart "is responsible for maintaining the parking lot." The letter states:

> We have been investigating an incident that occurred in your parking lot in which Richard Dyson lost control of his [bi]cycle due to a pothole. He sustained dental injuries with over $3000 in dental bills to repair the damage to his teeth.
>
> Documents pertaining to the land/property in question . . . confirm Walmart is responsible for maintaining the parking lot in question. Therefore, we ask you immediately place your liability carrier on notice of this matter and contact Richard Dyson.

On March 31, Dyson contacted Wal-Mart to submit a claim. On April 10, Wal-Mart denied Dyson's claim on the grounds that "[o]ur investigation into this matter indicates no negligence on the part of Wal-Mart." The letter to Dyson states:

> This letter is regarding your incident, which occurred on or about 05/13/2014 in the Wal-Mart/Sam's facility 2571 located in Federal Way, WA. Wal-Mart regrets any type of accident that occurs on the premises of their stores. It is Wal-Mart's goal to provide a reasonably safe place for their customers to shop.
>
> Our investigation into this matter indicates no negligence on the part of Wal-Mart Stores, Inc. We are respectfully denying this claim.

On October 13, 2016, Dyson filed a personal injury lawsuit against Wal-Mart and Broadway. Dyson served Wal-Mart with the complaint on December 14, 2016. The complaint alleges Dyson "was riding a bicycle in a parking lot owned, operated and maintained by one or both Defendants and located in Federal Way, Washington near Wal-Mart Store #2571." Dyson alleged, "Defendants negligently maintained the parking lot."

> Specifically, the surface of the parking lot was extremely cracked, buckled, and pitted, creating a[n] unreasonably unsafe condition. Defendant knew or should have known of this hazard in the exercise of reasonable care.

2

The condition of the parking lot was unsafe condition and a hazard to motorists and bicyclists making use of the parking lot and to whom the Defendant owed a duty to maintain a safe premises for normal use by persons driving or riding in the parking lot.

On December 29, 2016, Wal-Mart filed an answer and served Dyson with interrogatories. The response to interrogatories was due on January 31, 2017.

On January 27, 2017, Wal-Mart's attorney contacted Dyson's attorney. The Wal-Mart attorney said that without admitting liability, Wal-Mart agreed to accept "full responsibility for the condition of the parking lot" involved in the accident. Because Wal-Mart accepted responsibility, the Wal-Mart attorney told Dyson's attorney there was no need to continue to attempt service or pursue claims against Broadway as the owner of the premises. At the request of Dyson's attorney, the Wal-Mart attorney confirmed the agreement in writing. The January 27, 2017 letter states:

> As we discussed, Wal-Mart has accepted, without admitting any liability, full responsibility for the condition of the parking lot that was involved in your client's accident of May 13, 2014. As such, there will be no need for you to attempt to serve or pursue the original co-defendant, which was simply the owner of the premises. Wal-Mart was responsible for repair and maintenance of the parking lot, and has accepted all potential legal responsibility, if any, for any damages proven by Richard Dyson in this particular accident.

In May 2017, the King County Superior Court entered a noncompliance order. The order states Broadway did not file an answer to the complaint. On June 5, Wal-Mart's attorney sent a letter to Dyson's attorney reiterating that Wal-Mart accepted responsibility for all claims against Broadway. The attorney requested Dyson dismiss Broadway. The letter states:

> As previously communicated, Wal-Mart has accepted responsibility for all of Plaintiff's claims against Broadway 32nd Realty Corp. As such, please file a CR 41 Dismissal for Plaintiff's claims against Broadway because they are no longer a necessary party to the lawsuit.

On June 8, Dyson filed a CR 41 motion to dismiss Broadway. On June 16, the court entered an order dismissing all claims against Broadway with prejudice.

Wal-Mart deposed Dyson on July 24. The attorney showed Dyson a number of photographs of "the roadway leading into Wal-Mart's parking lot" and surrounding areas. Dyson identified the pothole that caused his bicycle accident. The pothole Dyson identified is located on property that Broadway, not Wal-Mart, is responsible for maintaining.

On July 26, Wal-Mart's attorney sent an e-mail to Dyson's attorney rescinding the agreement to accept responsibility for the condition of the parking lot where the accident occurred.

> Wal-Mart's agreement to take responsibility for the area of Mr. Dyson's accident was premised on his allegation that the accident occurred on Wal-Mart property. Accordingly, and in good faith, we agreed to take responsibility for the parking lot that Wal-Mart maintains under its lease with Broadway; we did not agree to take responsibility for other parking lots. During Mr. Dyson's deposition testimony it became apparent that the accident did not take place on Wal-Mart property as stated in Mr. Dyson's Complaint; it occurred across the street. Given this new information, Wal-Mart cannot agree to take responsibility for that area, as Wal-Mart does not own or maintain that area.[1]

Dyson's attorney stated that Wal-Mart's unilateral and erroneous decision to accept responsibility did not void the agreement and Dyson had relied on the agreement to dismiss the claims against Broadway.

> In his complaint, Mr. Dyson alleged that his accident occurred on property owned by one or both defendants, as he did not know which entity was the property owner. He alleged negligence of BOTH defendants for their failure to properly maintain the premises. Unless [Wal-Mart's attorney] was completely certain where the accident occurred, he should not have accepted responsibility and requested that the co-defendant be dismissed. There was never any determination, other than [Wal-Mart's attorney]'s

---

[1] Emphasis in original.

erroneous one, regarding where exactly Mr. Dyson's injury occurred. Mr. Dyson has relied to his detriment on [Wal-Mart's attorney]'s assurance that Wal-Mart was the responsible party and dismissed 32nd Street Realty Corp.

On August 9, Wal-Mart filed a motion for summary judgment dismissal of all claims alleged in the lawsuit. Wal-Mart argued it was entitled to rescind the agreement as a unilateral mistake. Wal-Mart argued it justifiably assumed Dyson's bicycle accident occurred on its property because Dyson sued Wal-Mart and "the area described in Dyson's Complaint generally aligns with Wal-Mart's leasehold." Wal-Mart argued it did not bear the risk of the mistake and enforcement of the agreement would be unconscionable. In support, the Wal-Mart attorney submitted a declaration and attached a copy of a "Lease Information Form" and diagram of the Rainier View Plaza, a Wal-Mart incident report, excerpts from Dyson's answers to interrogatories, copies of photographs admitted as exhibits during the deposition of Dyson, and correspondence with Dyson's attorney.

The Wal-Mart attorney states in his declaration that Wal-Mart leases the parking lot from Broadway and "[a]ttached hereto as Exhibit A is a true and accurate copy of the lease." The declaration does not attach the lease. Exhibit A is a Lease Information Form "[c]reated on December 19, 2016" and "Requested By" Wal-Mart claims representative Michael Keeler. The Lease Information Form contains very limited information. The Form states that the lease contains a "hold harmless" provision and that Wal-Mart is liable for the "parking lot" and "demised premises." "Exhibit B" is a diagram of the parking lot and landscape areas of Rainier View Plaza at 20th Avenue South and South 312th Street. The attorney states Exhibit B is an "accurate copy of an attachment to the lease, depicting the area of Wal-Mart's responsibility."

5

In response to the motion for summary judgment, Dyson did not dispute that Wal-Mart "was wrong as to a basic assumption" and that Wal-Mart "would not have assumed responsibility" for the condition of the parking lot where the accident occurred if not for its mistake. Dyson argued the undisputed record showed he did not have reason to know of or cause Wal-Mart's mistaken unilateral assumption of responsibility. Dyson asserted the record showed Wal-Mart conducted its own independent investigation before agreeing to accept responsibility for the condition of the parking lot where the accident occurred without regard to the complaint or his answers to interrogatories. Dyson argued the record established not only Wal-Mart's unequivocal unilateral decision to assume responsibility, but also its insistence that he dismiss Broadway.

The trial court granted Wal-Mart's motion for summary judgment and dismissed the complaint with prejudice.

## ANALYSIS

Dyson contends Wal-Mart did not meet its burden of establishing it can rescind the agreement to accept full responsibility for the condition of the parking lot that resulted in his injuries on the ground of unilateral mistake.

We review summary judgment de novo. Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). We engage in the same inquiry as the trial court, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reasonable minds

could reach only one conclusion, questions of fact may be determined as a matter of law. Owen, 153 Wn.2d at 788 (quoting Hartley, 103 Wn.2d at 775).

Washington courts follow the Restatement (Second) of Contracts elements of mistake. Denaxas v. Sandstone Court of Bellevue, LLC, 148 Wn.2d 654, 668 n.8, 63 P.3d 125 (2003) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 151-53 (AM. LAW INST. 1981)); Gill v. Waggoner, 65 Wn. App. 272, 278-79, 828 P.2d 55 (1992). A party seeking to rescind an agreement on the ground of unilateral mistake must prove (1) a mistake not in accord with existing facts as to a basic assumption that it relied on in making the agreement; (2) the effect of the mistake is such if the party had been aware of the mistake the party seeking to rescind would not have entered into the agreement; and (3) the other party knew of the mistake, had reason to know of the mistake, or caused the mistake. Gill, 65 Wn. App. at 278-79 (citing RESTATEMENT § 153); Snap-On Tools Corp. v. Roberts, 35 Wn. App. 32, 34-35, 665 P.2d 417 (1983); Diamond "B" Constructors, Inc. v. Granite Falls School Dist., 117 Wn. App. 157, 167-68, 70 P.3d 966 (2003); Denaxas, 148 Wn.2d at 668.

Restatement § 153 states:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
> (b) the other party had reason to know of the mistake or his fault caused the mistake.[2]

---

[2] A mistaken party who acted in bad faith is barred from seeking to void a contract based on unilateral mistake. See RESTATEMENT § 157. The record does not establish that either Wal-Mart or Dyson acted in bad faith.

The undisputed record establishes Wal-Mart mistakenly believed the accident occurred on the property it leased from Broadway and if Wal-Mart had been aware of the mistake, it would not have agreed to accept responsibility for the condition of the parking lot that caused the bicycle accident and damages.

Dyson argues Wal-Mart did not show Dyson knew of, had reason to know of, or caused Wal-Mart's mistake. Wal-Mart asserts it accepted responsibility based on the allegations in the complaint and answers to interrogatories that state the accident occurred on Wal-Mart property.

After the May 13, 2014 accident, Dyson contacted Broadway and Wal-Mart. Broadway engaged in an independent investigation and concluded Wal-Mart was responsible. The March 3, 2015 letter Broadway sent to Wal-Mart states, "We have been investigating an incident that occurred in your parking lot" and "[d]ocuments pertaining to the land/property in question . . . confirm Walmart is responsible for maintaining the parking lot in question." Broadway sent Dyson a copy of the letter and on March 31, 2015, Dyson contacted Wal-Mart to submit a claim. On April 10, 2015, Wal-Mart denied the claim. The letter states, "Our investigation into this matter indicates no negligence on the part of Wal-Mart."

Contrary to Wal-Mart's assertion, neither the complaint nor the answers to interrogatories state the accident occurred on Wal-Mart property. Critically, the uncontroverted record shows that before receiving interrogatory answers, Wal-Mart agreed on January 27, 2017 to assume "full responsibility for the condition of the parking lot" and "all potential legal responsibility, if any, for any damages."

Dyson filed his personal injury lawsuit against Broadway and Wal-Mart on October 13, 2016. The complaint alleges, "On or about May 13, 2014, Plaintiff Dyson was riding a bicycle in a parking lot owned, operated and maintained by one or both Defendants and located in Federal Way, Washington near Wal-Mart Store #2571."

Wal-Mart filed an answer and propounded interrogatories to Dyson on December 29, 2016. Answers to interrogatories were due January 31, 2017.

On January 27, 2017, Wal-Mart agreed it would accept responsibility for the condition of the parking lot where the accident occurred. The January 27, 2017 letter to Dyson states Wal-Mart "has accepted, without admitting any liability, full responsibility for the condition of the parking lot that was involved" in his accident. The letter specifically states Wal-Mart "was responsible for repair and maintenance of the parking lot, and has accepted all potential legal responsibility, if any, for any damages proven by Richard Dyson in this particular accident." The letter also states, "[T]here will be no need for you to attempt to serve or pursue the original co-defendant, which was simply the owner of the premises."

On June 2, 2017, Dyson responded to the interrogatories.[3] In response to the interrogatory asking for "a description of all the facts relating to the incident, the circumstances leading up to your injury of May 13, 2014, and any facts or circumstances you believe contributed to the cause of the incident," Dyson answered:

> I was riding my bicycle on the roadway leading into the Walmart. There were huge potholes in the roadway. I tried to avoid one, and the ended up front wheel going into an even bigger pothole. I flipped forward off my bike and landed on my face, breaking two of my teeth. I tried to

---

[3] Only undated excerpts from Dyson's answers to interrogatories are in the record on appeal. The declaration of Wal-Mart's attorney that attaches the pertinent answers to interrogatories states, "On June 2, 2017, Mr. Dyson responded to Wal-Mart's interrogatories."

break my fall and injured my left wrist and middle finger on my right hand. The cause of the accident was the poorly maintained condition of the roadway.

On June 5, 2017, the Wal-Mart attorney reiterated Wal-Mart's agreement to accept responsibility and insisted Dyson dismiss Broadway from the lawsuit.

> As previously communicated, Wal-Mart has accepted responsibility for all of Plaintiff's claims against Broadway 32nd Street Realty Corp. As such, please file a CR 41 Dismissal for Plaintiff's claims against Broadway because they are no longer a necessary party to the lawsuit.

A unilateral mistake of fact may be grounds for relief if the other party knows of the mistake. Snap-On Tools, 35 Wn. App. at 35. Wal-Mart argues it is entitled to rescind the agreement as a unilateral mistake because Dyson knew the "precise location" where he fell. The record shows Dyson knew Broadway investigated his claim and informed Wal-Mart that Wal-Mart was responsible for the condition of the roadway where he fell. The record also shows Wal-Mart investigated and independently decided to accept responsibility for the roadway where the accident occurred before engaging in discovery.

The only evidence Wal-Mart cites to argue Dyson knew or should have known of its mistake is a diagram attached to Wal-Mart's lease with Broadway that shows the boundaries of its area of responsibility. Wal-Mart produced the diagram and referred to the lease with Broadway for the first time in support of the summary judgment motion to dismiss the complaint. The record establishes Dyson did not know or have reason to know about the provisions of the lease between Broadway and Wal-Mart or the diagram and boundaries in the lease. We conclude Wal-Mart did not meet its burden to establish Dyson had reason to know about or caused Wal-Mart's mistake.

10

Gill is analogous. In Gill, the plaintiff was injured in a traffic collision and incurred medical bills of $37,156. Gill, 65 Wn. App. at 274. The insurance company offered to pay only $3,500. Gill, 65 Wn. App. at 274. Due to a miscommunication, a new insurance adjuster offered $35,000 instead of the $3,500 that the insurance company authorized. Gill, 65 Wn. App. at 275. The plaintiff accepted the offer. The insurance company argued the agreement was void as a unilateral mistake. Gill, 65 Wn. App. at 275-76. The court held the plaintiff had no reason to know of the insurance company's mistake because he "could reasonably have come to the conclusion that [the insurance company] evaluated his claim at $35,000." Gill, 65 Wn. App. at 277. As in Gill, the undisputed record shows Dyson had no reason to know of Wal-Mart's mistake because he reasonably could have come to the conclusion that Broadway's and Wal-Mart's investigations showed Wal-Mart was responsible for the condition of the parking lot.

The undisputed record also establishes Wal-Mart did not meet its burden of proving it did not bear the risk of the mistake. The party seeking to rescind a contract on the ground of unilateral mistake must not have borne the risk of the mistake. Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 362, 705 P.2d 1195 (1985).

> [A] party bears the risk of mistake when, at the time the contract is made, the party is aware of limited knowledge with respect to the facts to which the mistake relates but treats such limited knowledge as sufficient. It is said in such a situation that there is no mistake; instead, there is an awareness of uncertainty, a conscious ignorance of the future.

Pub. Util. Dist. No. 1, 104 Wn.2d at 362[4] (citing RESTATEMENT § 154). Restatement §

---

[4] Citations omitted.

154 states:

> A party bears the risk of a mistake when
>> (a) the risk is allocated to him by agreement of the parties, or
>> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Contrary to the assertion of Wal-Mart, neither case law nor the record supports the argument that it did not bear the risk of the mistake. The record shows Wal-Mart decided to accept responsibility based on the independent investigation of Broadway and its own investigation almost immediately after Dyson filed the lawsuit. Because Wal-Mart decided to treat the limited knowledge it had as sufficient, it bears the risk of the mistake.

Wal-Mart argues enforcement of the agreement to accept responsibility for Broadway's parking lot would be unconscionable. Whether an agreement is unconscionable is a question of law we review de novo. McKee v. AT&T Corp., 164 Wn.2d 372, 396, 191 P.3d 845 (2008); Gill, 65 Wn. App. at 278 ("Whether particular facts render an agreement unconscionable is a question of law.").

In cases of mistake, courts have discretion to "grant relief on such terms as justice requires." RESTATEMENT § 158(2). "An unconscionable contract is one which 'no man in his senses, not under delusion, would make . . . and which no fair and honest man would accept.' " Gill, 65 Wn. App. at 278[5] (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wn. App. 439, 444, 556 P.2d 552 (1976)).

---

[5] Alteration in original.

Ideally, the court will grant relief to put the parties in the position they were in before the mistake, but that is not possible in all cases. RESTATEMENT § 158 cmt. b. A contract may be enforceable if the nonmistaken party has relied on the contract. Gill, 65 Wn. App. at 278. "Reliance by the other party may make enforcement of a contract proper although enforcement would otherwise be unconscionable." RESTATEMENT § 153 cmt. d.

The uncontroverted record establishes Dyson relied on Wal-Mart's unequivocal acceptance of responsibility and insistence that he dismiss Broadway. Under the circumstances of this case and the relationship between Wal-Mart and Broadway, we conclude enforcement of Wal-Mart's agreement to accept responsibility for the parking lot where Dyson fell is not unconscionable.

We reverse summary judgment dismissal of the lawsuit against Wal-Mart and remand for trial.

WE CONCUR: