

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of the Estate of )
) No. 37231-6-III
MILDRED ILENE SMITH. )
)
) UNPUBLISHED OPINION
)
)
)

FEARING, J. — An heir of an intestate estate challenges the probate court's closure

of the estate and the heir's distributive share of the estate. We affirm the probate court's

rulings.

FACTS

Mildred Smith died intestate on January 29, 2018 in Walla Walla County. Her

estate included her College Place residence, initially valued at $135,470, and real

property in Iowa. Her three sons, Kenneth Smith, Guillermo F. Garcia (formerly Billy

Smith), and Robbie Smith, survived her. On June 12, 2018, the Walla Walla County

Superior Court appointed Suzanne Knapp, a family friend, and Justin Cadwallader,

Mildred's grandson and Garcia's son, as personal representatives of the estate.

Suzanne Knapp and Justin Cadwallader sought nonintervention powers. The two mailed, to the heirs, notice of a July 9, 2018 hearing on their petition for nonintervention powers. Robbie Smith filed a July 1, 2018 declaration in support of nonintervention powers. Robbie signed the declaration as "Robert Henry Smith," although the declaration noted that Robert H. Smith's legal name is "Robbie Kenneth Smith." Clerk's Papers (CP) at 18.

Guillermo Garcia attending the hearing on the motion for nonintervention powers. Report of Proceedings (RP) (Jul. 9, 2018) 1. During the hearing, Garcia mentioned that he and his mother wrote a will for her in 2015, which she signed but not in front of witnesses. He questioned why his mother would appoint Suzanne Knapp as a personal representative. He had expected his son, Justin Cadwallader, to be the sole executor of the will. Nevertheless, he expressed no objection to the granting of nonintervention powers, provided that the estate closed "according to the explicit terms and language of Mildred Smith's last will and testament." Report of Proceedings (RP) (Jul. 9, 2018) at 4. Presumably he referred to the will he prepared that was not probated. The probate court responded to Garcia's demand by stating Garcia could register objections to any purported breach of duty by the personal representatives. The court informed Garcia that an order of nonintervention powers would not prevent him from expressing his wishes. The probate court determined that Garcia had consented to nonintervention powers. The court granted Knapp and Cadwallader nonintervention powers.

2

At the death of Mildred Smith, her College Place home lay in disarray. Smith was a hoarder. Garbage crowded the house, garage, and outbuildings on the property. Boxes and debris prevented access across the floors.

Suzanne Knapp consulted a real estate broker and builder for recommendations about repairs and cleaning that the personal representatives should undertake. The real estate broker and local builder advised that the expense of cleaning the home would benefit the estate by garnering a higher sales price.

Beginning in the summer of 2018, Robbie Smith lived in the College Place home. He removed some of the clutter. Robbie held six yard sales and accrued $3,355 from the sales. The personal representatives eventually deducted this amount from Robbie's share of the estate.

Mildew, dust, and animal feces infected many boxes on Mildred Smith's property. Suzanne Knapp, on behalf of the estate, hired professional haulers who specialized in clearing the properties of hoarders. For three to four days in June 2018, trucks removed objects from inside the house. Jose Pepe Quezada, Mildred Smith's neighbor for thirty years, wrote a declaration, in which he declared that the haulers removed some objects that held value. Robbie Smith deemed all objects junk.

From May 16, 2018 to August 2018, Guillermo Garcia wrote twelve e-mails to Mildred Smith Estate's attorney Lenard Wittlake expressing his frustrations regarding his mother's estate. His e-mail often referenced his mother's will. He threatened

disinheritance of his brothers, and, on June 9, 2018, he stated that he planned to file the 2015 will in probate court.

Guillermo Garcia's access to the College Place abode was limited during the time that Robbie Smith lived therein. On June 22, 2018, the Walla Walla County District Court granted Robbie Smith's petition for an order of protection against Garcia. Pursuant to the order, Garcia could only visit the College Place home from 8 a.m. to 12 p.m.

In a July 10, 2018 e-mail, Guillermo Garcia contended that Lenard Wittlake served as the attorney not only for the estate of Mildred Smith, but also for Robbie and Kenneth. He insisted that, since the estate paid Wittlake's fees, Wittlake functioned as Garcia's lawyer also. Garcia employed colorful language when referencing his brothers as "MORONS" and accusing Kenneth of being a "LIAR AND A THIEF." CP at 306. He accused Wittlake of lying and acting unethically. Garcia threatened to disinherit his brothers for retaining Wittlake and Suzanne Knapp.

On August 23, 2018, the Walla Walla County District Court modified the order of protection and prohibited Guillermo Garcia from approaching the College Place dwelling at any time.

In November 2018, two sewer lines broke and created water and mold damage to the home. Suzanne Knapp, on behalf of the estate, paid $17,535.36 for extensive work to replace the sewer lines. According to Jose Pepe Quezada, after installation of a new sewer line, no one cared for the College Place residence's lawn. The lawn lay in

shambles with the presence of large patches of dirt and rocks unearthed during the digging for the new sewer.

Jose Quezada declared that Robbie Smith offered to sell him the College Place house for $150,000. At a later time, however, according to Quezada, Robbie told him that he could no longer sell the house for $150,000 because he spent $20,000 in removing the hoarded detritus. Robbie disclosed that he needed to disappear because "'We are in big trouble.'" CP at 73.

From September 2018 to May 2019, Guillermo Garcia wrote abusive e-mail to Suzanne Knapp. In a September 11, 2018 e-mail, Garcia stated that he did not desire any objects to the residence as he held no emotional attachment to the house or its contents. In other messages, Garcia accused Knapp of stealing and labeled her a "lying piece of filth." CP at 315 (capitalization omitted). Knapp obtained a protection order against Garcia.

In March 2019, the estate of Mildred Smith sent Guillermo Garcia an inventory of probate assets.

After the sewer repairs and removal of the hoarded personal property, Guillermo Garcia asked to live in the College Place residence. If Garcia had earlier expressed his wish to own the home, the personal representatives would have ceased the repairs and cleanup and attempted to reach an agreement to sell the home to Garcia. Garcia did not mention his desire to own the residence until the personal representatives hired a realtor,

and Garcia then attempted to preclude realtors from showing the home. Despite his conduct, the personal representatives still asked Garcia to tender a formal offer through a realtor.

Guillermo Garcia submitted a bid higher than other offers to purchase Mildred Smith's College Place residence. The estate accepted the bid. On June 28, 2019, Guillermo Garcia signed a purchase and sale agreement for the purchase of the College Place home at $185,000. On July 1, 2019, both personal representatives signed a declaration acknowledging Garcia's offer to purchase the home "for $185,000.00 using part of his share of the proceeds from the sale of land in Iowa to fund the transaction." CP at 211. The personal representatives declared that they agreed to a value of the premises of $185,000. Robbie and Kenneth Smith both agreed to a valuation of the home at $185,000.

On July 8, 2019, Guillermo Garcia signed a declaration which confirmed his offer to purchase the College Place home "from the estate for $185,000.00 using part of my share of the proceeds from the sale of land in Iowa to fund the transaction. . . . I acknowledge that the value of the premises is $185,000.00 and agree it shall be valued at that amount in a non-prorata distribution." CP at 210.

On July 12, 2019, a year after the probate court granted the personal representatives nonintervention powers, Guillermo Garcia filed a petition requesting a report on the affairs of Mildred I. Smith pursuant to RCW 11.68.065 "Report of affairs of

6

estate – Petition by beneficiary." CP at 12-17. Garcia contended that the personal representatives withheld information about the estate from him. Garcia averred that he repeatedly asked attorney Lenard Wittlake to explain how Suzanne Knapp became a personal representative. He also alleged that Robbie Smith's July 1, 2018 declaration agreeing to non-intervention powers contained a forged signature. He asserted that, at the time the court awarded nonintervention powers, he permitted Suzanne Knapp and her counsel to "believe they had succeeded in gaining legal authority to administer the estate." CP at 13.

In his petition for a report of estate affairs, Guillermo Garcia alleged mishandling of the estate by the personal representatives and the estate's attorney. Garcia contended that, in June 2018, Suzanne Knapp promised to provide a financial spreadsheet of the affairs of the estate, but she failed to do so. He averred that someone told him that he would receive $7,000 in rent from the Iowa land, but he only received $2,000.

In his petition, Guillermo Garcia contended that the decision to permit Robbie to live in the College Place home left Garcia homeless. Further, he contended that Smith illegally rented rooms in the home and never lived there. He complained that he never received any portion of the rent payments. He also alleged that no one prepared a ledger of income from Robbie Smith's yard sales. Garcia explained that he offered to buy the house for $185,000, the high end value for the residence, but he lacked any intention of purchasing the house for that price since he already owned one-third of the home.

In his petition for a report, Guillermo Garcia asserted that the estate parked his mother's Cadillac at a Walla Walla shop. A for-sale sign in the window of the car listed the car's price as $1,999 or best offer. Garcia averred that he spoke to the shop owner and offered to purchase the car. The shop owner replied that the car would be sold as part of an estate sale. According to Garcia, personal representative Justin Cadwallader later contacted Garcia and told him that the car would cost $2,500, because the personal representatives had added a new battery and detailed the car.

Guillermo Garcia concluded his petition by requesting a full accounting for estate affairs. In an attachment titled "Correction, Exhibit B," Garcia asked that the nonintervention powers granted to the personal representatives be revoked. CP at 19. Garcia attached to his petition forty-four pages of low quality, black and white pictures without an explanation of the relevance of the photographs.

On July 26, 2019, Guillermo Garcia filed a supplemental declaration. This declaration attached more photographs that purportedly showed neglect of the lawn and the stacking of materials outside the home. The photos of the house were shadowed and taken from a distance. In the declaration, Garcia complained that Suzanne Knapp paid thousands of dollars to herself and her counsel.

On July 29, 2019, the estate of Mildred Smith filed a declaration of Suzanne Knapp with an annual report on the affairs of the estate attached. The annual report, dated July 11, 2019, detailed that the estate intended to close the sale of Mildred Smith's

home to Guillermo Garcia by July 15. The sale would constitute a beneficiary distribution. According to Knapp, on July 12, 2019, she e-mailed the annual report of the estate to Kenneth and Robbie. She declared that she handed the annual report, keys to the estate home, and a note about a cat to ReNae Davis of Sotheby's International Realty for distribution to Garcia. Davis confirmed via e-mail that she hand delivered the package to Garcia at approximately 5 p.m. on July 12.

On July 29, 2019, the trial court conducted a hearing on Guillermo Garcia's petition for a report of the affairs of the estate. Garcia appeared pro se. At the hearing, estate attorney Leonard Wittlake asked the superior court for a continuance since he lacked an opportunity to discuss Garcia's supplemental declaration, filed the Friday before the hearing, with his clients. Garcia agreed to a continuance. The trial court scheduled the next hearing for August 12.

On August 12, 2019, the estate of Mildred Smith filed another declaration of Suzanne Knapp regarding the estate accounting. The declaration provided additional details, including pictures of the property before Robbie Smith took possession, copies of bills for cleaning the property, a copy of the order of protection against Guillermo Garcia that kept him from returning to the College Place home, all bank statements for the estate account, copies of comparable homes used by the realtor to price the College Place home, and a spreadsheet of all transactions on behalf of the estate.

On August 12, 2019, the probate court conducted the continued hearing. Lenard

Wittlake told the trial court that Suzanne Knapp's report included:

> all of the estate taxes, and it does include the bank statements so he can verify the transactions actually went through the estate bank account. It includes comparable on the house in College Place that is to be distributed to Mr. Garcia. It includes the listing agreement.
> . . . Mr. Garcia indicated an intent that he wanted the College Place house, so the personal representatives took it off the market and will include that a non pro rata distribution as part of Mr. Garcia's inheritance, and he also signed a declaration agreeing to receive that as part of his inheritance.

Report of Proceedings (RP) (Aug. 12, 2019) at 5-6. Counsel Wittlake indicated that the

personal representatives would soon close the estate. Nevertheless, he noted:

> [I]n attempting to transfer title to the house, Mr. Garcia refused to sign the Writ of Real Estate Excise Tax Affidavit and his declarations on this petition indicate that he made that refusal because he thought that that [sic] would close the estate and he would no longer have a right to an accounting. I do have the excise tax affidavit available if he cares to sign it, and take title, or we can leave that for a Decree of Distribution and decide that at that time. Whatever Mr. Garcia prefers to do.

RP (Aug. 12, 2019) at 6.

During the August 12 hearing, Guillermo Garcia informed the court that he would

like to compare Suzanne Knapp's report to other documents in order to determine the

report's veracity. Garcia also requested that the trial court require the personal

representatives to give him invoices from the distribution of the Iowa land rent. He

contended that he was entitled to such documentation under RCW 11.68.065. Lenard

Wittlake responded that, under the statute in question, Garcia did not have a right to the

documentation he requested, until a year had passed from the appointment of the personal representatives. He also affirmed that the report contained a complete accounting for all estate transactions and affairs.

Before the conclusion of the August 12 hearing, Lenard Wittlake informed the probate court that he needed clarification from Guillermo Garcia as to his address. Wittlake commented that mail sent to Garcia was returned marked "'Return to Sender.'" RP (Aug. 12, 2019) at 13. Garcia responded to Wittlake's remarks: "Because you are not my attorney, remember?" RP (Aug. 12, 2019) at 14. The court told Garcia that, in the future, he should open mail from Wittlake.

At the conclusion of the August 12, 2019 hearing, the probate court denied Guillermo Garcia's requests for relief. The court explained that Garcia would have the opportunity to raise any objections at the time that the estate petitioned for a decree of distribution. Lenard Wittlake stated that the personal representatives anticipated closing the estate within twenty days. The superior court informed Wittlake to give Guillermo Garcia plenty of notice when filing the petition to close the estate.

On August 14, 2019, Guillermo Garcia filed another supplemental declaration. In the declaration, he characterized the personal representatives' August 12 accounting as insufficient and he announced his opposition to closing the estate. He demanded documents and answers to questions. Garcia asked why his mother's grave still lacked a headstone. He demanded verified statements showing what beneficiaries received from

the estate in 2018. He demanded photocopies of all estate checks payable to beneficiaries, Suzanne Knapp, and Lenard Wittlake. He asked to whom Robbie rented the College Place home and demanded a full accounting of rent Robbie received. He requested a list of all objects sold during estate sales in 2018 and 2019, a list of his mother's button and doll collections, copies of all communications exchanged between beneficiaries, Lenard Wittlake, or the personal representatives. Garcia demanded, before distribution of the estate benefits, Robbie's portion of the family property for his failure to meet the terms of the court order allowing him residency in the College Place home. He requested sanctions against Suzanne Knapp.

Guillermo Garcia filed numerous other declarations, addenda, motions to compel, and requests for sanctions during August and September 2019.

## PROCEDURE

We now arrive at the motion that gives rise to this appeal. On October 1, 2019, the personal representatives of the estate of Mildred Smith filed a notice of final accounting and intention to distribute assets. The final accounting included an updated inventory and calculations of distributive shares, early distributions, and remaining distributions. The final accounting noted that Guillermo Garcia would receive an $185,000 distribution in the form of the College Place property. With the final accounting, the personal representatives filed a motion to close the estate. The estate scheduled the hearing on the motion for October 21, 2019. The three heirs all received

the motion, notice of final accounting and intention to distribute assets, note for motion docket, and the proposed order closing the estate.

On October 4, 2019, Guillermo Garcia filed a notice requesting a six-week continuance because the October 21 hearing was inconvenient. The hearing was continued to November 4, 2019. On October 4, 2019, Garcia also filed a response to the motion to close the estate. He agreed with the estate's calculations that he should receive a gross share of $275,110.34. Nevertheless, he insisted that only $124,334 of the $185,000 should be deducted from his approximately $275,000 share of the distribution of the estate. He reasoned that he already owned a one-third share.

In early October 2019, Guillermo Garcia filed more pleadings. On October 7, 2019, Garcia filed a motion to freeze the estate. In this motion, Garcia informed the court that he intended to contest the $185,000 purchase price of the property. He wrote:

> [E]ven if we were to deduct the entire $185,000, from the $275,000.00, that would leave a balance of $90,000.00! Apparently, their math skills are sadly lacking or they are intent—as they have been from the start—to deny my inheritance or significantly diminish it.
> However, if we take $275,000.00 and remunerate back to me 1/3 of that as I was already a 1/3 owner of the property, I am still owed around $150,000.00!

CP at 248. He requested that the trial court freeze the estate until the personal representatives delivered requested documents to him and until a forensic accountant delivered a report of the accountant's review of the records.

13

On October 9, Guillermo Garcia filed a motion to compel the production of names and contact information for the "illegal" renters of the College Place residence. On October 10, Garcia filed a letter to Lenard Wittlake regarding the closing of the estate.

On October 11, 2019, Guillermo Garcia filed a motion agreeing to docket the hearing on the motion to close the estate for November 4, 2019. In the motion agreeing to the hearing date, he offered to settle his claims against the estate for title to the College Place residence and $250,000. In turn, he would release Robbie from liability for his misconduct if he would not return to the Walla Walla Valley. On October 11, Garcia filed a letter written to Lenard Wittlake, in which he demanded $250,000 in exchange for approving a November 4 hearing for closing the estate.

On October 30, Guillermo Garcia filed a notice that repudiated his July 8, 2019 declaration, in which he agreed to purchase the College Place property for $185,000. He claimed duress at the time of agreeing to the purchase price. He also claimed that he suffered duress when he signed the July 8 declaration. He asserted that, had he not signed the declaration, the personal representatives would have rejected his bid and the house would have sold to another. Garcia declared that, at the time of Mildred Smith's death, the home was valued at $131,000. On October 30, Garcia also filed another motion to freeze the estate. Garcia filed additional motions between October 30 and November 1, including a response to Lenard Wittlake's motion to close the estate.

14

On November 1, 2019, the estate of Mildred Smith filed an updated accounting. The estate also filed a response to Guillermo Garcia's various motions.

On November 4, 2019, the trial court convened to address the estate of Mildred Smith's motion to close the estate. Both parties then requested a continuance. Lenard Wittlake, counsel for the estate of Mildred Smith, stated that the personal representatives wished to postpone the hearing for two weeks in order to complete final tasks. Guillermo Garcia claimed that he had not received any estate documents. Garcia insisted that he needed to obtain an attorney and a forensic accountant to show that the personal representatives failed in their legal and fiduciary capacities. The probate court granted the two week continuance.

On November 6, 2019, two days after the hearing at which he expressed a desire to retain an attorney, Guillermo Garcia filed a notice of appearance on his behalf. In the notice, Garcia contended that Lenard Wittlake was a liar, and Garcia complained about actions of the probate judge. Garcia asserted:

> Apparently, the bench and Lenard Wittlake feel they aren't bound by legal ethics when it comes to dealing with me. . . . It is clear that the [judge's] decision was reached in chambers in illegal consultation with Lenard Wittlake, 'ex parte' as evidenced by the notification of the bench's decision emanated from the Wittlake Law Firm and not from the Court. Apparently, these two are good buddies.

CP at 324.

On November 7, 2019, Guillermo Garcia filed a letter sent to Lenard Wittlake and

the trial court that challenged the final report of the estate as "insane."

> I, already, own 1/3 of the family property. My share of the estate—
> from your final report—is $275,000.00. I accept that figure.
> As such, my cost for purchasing the family property is not
> $185,000.00, but around $124,000.00. That leaves a balance in my share of
> the family estate of around $151,000.00. Not $68,000.00! You, either,
> failed grade school math or you are a lying, thieving, insult to the practice
> of law and the judge is complicit in your lies and thievery. I will find out,
> trust me!
> . . . .
> My last offer to save your bacon—and the rest of the criminals with
> which you have aligned yourself—still stands. I inherit the family
> property, free and clear, and you send me a money order for $600,000.00
> for the $275.000.00 share of the estate, reparations and remunerations to me
> for your criminal acts; including, illegal ex parte communication and
> conversations with the bench. I will find out the truth!

CP at 339 (some capitalization omitted) (boldface omitted). On November 8, Guillermo

Garcia filed other pleadings, including a request to bring Robbie Smith in person to court,

a demand for copies of contracts between Wittlake and Suzanne Knapp that would show

whether he should be considered a client of Wittlake, and a request for sanctions against

Wittlake and Knapp for violating legal ethics.

On November 12, 2019, the Wednesday before the Monday hearing to close the

estate, Guillermo Garcia filed a letter to Lenard Wittlake again requesting estate

documents. On November 14, Garcia filed a motion to compel his son, Justin

Cadwallader, to appear in court and provide testimony. On November 14, he filed a

request for mediation. Garcia did not serve the November 14 filings on estate counsel.

On November 15, the Friday before the scheduled Monday hearing, the estate of

Mildred Smith filed a response to the extensive motions, requests, and demands of

Guillermo Garcia. The response referenced pending motions and other pleadings filed by

Garcia between October 9, 2019 and November 14, 2019. The estate also filed a

declaration by its counsel, Lenard Wittlake. In attachments to the declaration, Wittlake

outlined the time and expenses incurred by his office to resolve the probate. He averred

that the estate incurred, among other expenses, $12,146 "solely due to the actions of Mr.

Garcia." CP at 381. The amount included a district court award of sanctions against

Garcia. Wittlake provided an accounting for time worked.

On November 18, 2019, the trial court held the continued hearing on the motion to

close the estate. During the hearing, the following exchange transpired between the

probate court and Guillermo Garcia:

> MR. GARCIA: . . . I have had absolutely nothing to address this
> thing, and I am contesting the closing of the estate. Because it's—he says
> he's ready to close if no one contests it. Well, I am contesting it. I need
> those documents. Okay? We could, you know, move this thing along if
> you could just ask him who signed that declaration on July 6, 2018. Just
> ask him. It's his work product. He knows who signed it. It wasn't my
> brother.
> But be that as it may, I think we need to go to mediation.
> THE COURT: What are you going to mediate?
> MR. GARCIA: Hmm?
> THE COURT: What are you going to mediate? There is an
> accounting in the file as to the estate.
> MR. GARCIA: For instance, I just found out this week that my one-
> third inheritance in the family property got stolen and given to the other
> two beneficiaries. I had already reputed the declaration. The $185,000 that

> I bid to buy the house, the property, was already under duress.  They were trying to sell it without contacting me . . . .
>> THE COURT: Did they sell it?
>> MR. GARCIA: Pardon?
>> THE COURT: Did they sell it?
>> MR. GARCIA: Yes, they sold it to me.
>> THE COURT: Well, no, it's being distributed to you.
>> MR. GARCIA: No.
>> THE COURT: Well, obviously it's part of your inheritance.  You
> don't get it plus a third of the rest of the estate, or whatever your share is,
> I'm sorry.

RP (Nov. 18, 2019) at 19-20.

At the November 18 hearing, estate of Mildred Smith counsel Lenard Wittlake acknowledged that he filed pleadings the Friday before the hearing and he did not know if Guillermo Garcia had seen the documents.  He mailed the documents instead of hand-delivering them, because Garcia, as recently as two weeks ago, had declined hand-delivery.  Garcia returned the envelope from the earlier personal service, on which envelope Garcia wrote: "'Step on my property again and I will have you arrested for trespass.'"  RP (Nov. 18, 2019) at 25.  Garcia never disclosed whether he received the pleadings filed by the estate on November 15.

During the November 18 hearing, the estate of Mildred Smith requested that Guillermo Garcia be assessed $12,146 in legal fees incurred by the estate as a result of his litigious conduct.  The estate requested that the amount be deducted from Garcia's distributive share.

At the conclusion of the November 18, 2019 hearing, the probate court announced:

> I'm denying your [Guillermo Garcia's] motions, requests and demands and I'm ordering the estate be closed. I'm satisfied that it's been handled properly. If you want to appeal it you can do that within 30 days. And Mr. Wittlake, you can deduct two-thirds from his share of the costs.

RP (Nov. 18, 2019) at 28. On the same day, the trial court entered a written order denying all of Guillermo Garcia's motions, requests, and demands and awarding the estate of Mildred Smith $12,146.00 against Garcia's share of the distribution because of his pleadings that did not benefit the estate.

## LAW AND ANALYSIS

On appeal, Guillermo Garcia assigns three errors to the probate court proceeding. First, he complains that the court proceeded with the November 18, 2019 hearing to close the estate despite the estate mailing him reply pleadings the business day before. Second, the probate court erroneously deducted the full value of the College Place residence from his share of the distribution. Third, the probate court mistakenly assessed him two-thirds of some of the estate of Mildred Smith's attorney fees.

### Notice of Estate Closure Hearing

Guillermo Garcia contends the probate court erred in ordering the estate closed when the estate of Mildred Smith mailed him pleadings supporting closure on the Friday before the Monday hearing. He argues that filing the documents on the last business day

before the hearing violated notice requirements under RCW 11.68.100 and RCW 11.76.040. He also contends that, even if the documents were supplemental or in response to his own filings, they violated Walla Walla County Local Rules 7 B.1 and 7 B.2. The estate responds that Garcia received notice of the hearing to close the estate on October 1 in compliance with the statute.

Chapter 11.68 RCW governs settlement of estates without administration. Under RCW 11.68.100(2), when a personal representative seeks to obtain a decree to close an estate, he or she must give notice "as provided for in the settlement of estates by a personal representative who has not acquired nonintervention powers." In turn, RCW 11.76.040 governs settlements of estates and requires a personal representative to give an heir twenty days' notice of a hearing:

> Whenever a final report and petition for distribution, or either, shall have been filed in the estate of a decedent and a day fixed for the hearing of the same, the personal representative of such estate shall, *not less than twenty days before the hearing*, cause to be mailed a copy of the notice of the time and place fixed for hearing to each heir, legatee, devisee and distributee whose name and address are known to him or her, and proof of such mailing shall be made by affidavit and filed at or before the hearing.

(Emphasis added.)

We note that the estate of Mildred Smith gave Guillermo Garcia twenty days' notice of the initial October 21, 2019 hearing date to close the estate. Garcia was afforded even more time because of continuances of the October 21 hearing date. The estate filed the November 15, 2019 pleadings, the late filing about which Garcia

20

complains, in response to Garcia's pleadings, including motions that Garcia filed on November 14. Garcia does not mention when he first saw the estate's November 15 pleadings. He does not suggest he would have acted differently had he received the pleadings sooner.

We reject the first assignment of error because Guillermo Garcia did not object to proceeding with the motion to close on November 18, nor did he then ask for a continuance. He had asked for a continuance two weeks earlier, so he knew he could have asked for one on November 15. At the November 18 hearing, Garcia did not reference the statute or local court rules, on which he now relies. We will not address an argument raised for the first time on appeal. RAP 2.5(a).

## Distribution of Residence

Guillermo Garcia contends that Suzanne Knapp violated her fiduciary duty owed to him by failing to inform him, before closure of the estate, that his election to receive the College Place home as a non-pro-rata distribution meant that the distribution would be at its full value, $185,000. He contends that Knapp knew that he believed only two-thirds of the property or $125,000 would count toward his share as he already owned 1/3 of the estate of Mildred Smith. He asks this court to reverse the closure of the estate based on a unilateral mistake and to order that the non-pro-rata distribution be that of the actual market value of the home on the date of distribution or the amount of $123,201. He then requests that amount be used to determine what he is still owed from the

21

remaining assets. The estate responds that the actual "cost" of the home to Garcia *was* only two-thirds of the full cost of the house even though the entire $185,000 was calculated against his share. In reply, Garcia concedes the accuracy of the estate's calculations, but he emphasizes that he misunderstood that only $125,000 would be credited against his share of the distribution.

The personal representative stands in a fiduciary relationship to those beneficially interested in the estate. *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). She is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs. *In re Estate of Larson*, 103 Wn.2d 517, 521(1985). The personal representative acting with nonintervention powers has the discretionary power to make non-pro-rata distributions. *In re Estate of Ehlers*, 80 Wn. App. 751, 763, 911 P.2d 1017 (1996).

One party to a contract is not liable if the contract is based on that party's unilateral mistake and the other party to the contract knows of or is charged with knowledge of the mistake. *Gill v. Waggoner*, 65 Wn. App. 272, 276, 828 P.2d 55 (1992). A party to a contract is entitled to reformation of the contract based on one party's unilateral mistake only if the other party engaged in inequitable conduct. *Oliver v. Flow International Corporation*, 137 Wn. App. 655, 664, 155 P.3d 140 (2006). A party acts inequitably if she knowingly conceals a material fact from the other party and has a duty

to disclose that knowledge to the other party. *Oliver v. Flow International Corporation*, 137 Wn. App. 655, 664 (2006).

Although he initially argued otherwise, Guillermo Garcia now agrees the estate of Mildred Smith properly calculated his distribution. Nevertheless, he contends he should be able to profit by his original mistake in understanding with the result that he would receive more than his two brothers. We reject this argument because he presented no evidence that the personal representatives knew he labored under a misunderstanding or that the personal representatives acted inequitably. If anything, the record shows that he understood that he was purchasing the College Place home for $185,000. Garcia's position is unfair to his brothers.

Payment of Attorney Fees

Guillermo Garcia next argues that the superior court erred when imposing two-thirds of attorney fees incurred by the estate of Mildred Smith when he is a one-third beneficiary. Garcia contends that the trial court erred in failing to enter findings of fact and conclusions of law explaining the court's reasoning for requiring Garcia, a one-third beneficiary, to pay two-thirds of the fees incurred by the estate in handling the closing of the estate. He argues that, at the very least, this matter should be remanded to the trial court to enter proper findings of fact and conclusions of law. The estate responds that the trial court did not order Garcia to pay two-thirds of *all* fees, but two-thirds of extra costs incurred by the estate for the work performed by Lenard Wittlake in responding to

23

Garcia's pleadings that did not benefit the estate. The estate contends that the trial court was not required to enter findings of fact or conclusions of law.

RCW 11.96A.150 provides for an award of costs, including reasonable attorney fees, in the trial court's discretion:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, *including reasonable attorneys' fees*, to be paid in such amount and in such manner as the court determines to be equitable. *In exercising its discretion under this section, the court may consider any and all factors* that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

(Emphasis added.)

We recognize that the superior court should generally enter findings of fact to support an award of reasonable attorney fees and costs. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). The purpose of the findings is to permit appropriate appellate review. *In re Detention of La Belle*, 107 Wn.2d 196, 218-19, 728 P.2d 138 (1986).

In Guillermo Garcia's appeal, we decline to apply the rule directing the superior court to enter findings of fact because Garcia does not challenge the amount of the fees or any particular basis for the award. Instead Garcia argues that he should not have been assessed two-thirds of the fees. As part of this assignment of error, he further complains about the probate court's substantive rulings.

The estate of Mildred Smith astutely notes that the probate court did not impose two-thirds of all attorney fees incurred by the estate on Guillermo Garcia. Instead, the court limited the award to conduct of Garcia that unnecessarily and unreasonably increased the estate's cost. In its appellate briefing, the estate outlines the lengthy factual and procedural background that supports the imposition of sanctions by the trial court. In addition to the insistent and persistent motions, requests, declarations, and demands, Guillermo Garcia hurled accusatory language, name-calling, and personal attacks toward Suzanne Knapp and Lenard Wittlake.

Attorney Fees on Appeal

Both parties seek an award of reasonable attorney fees and costs on appeal. Guillermo Garcia requests attorney fees under RCW 11.68.070 and 11.96A.150. The estate of Mildred Smith requests attorney fees under RCW 11.96A.150. We award the estate its attorney fees against Guillermo Garcia.

RCW 11.68.070 provides a procedure for the court to remove a personal representative from this position and to restrict nonintervention powers. Under such circumstances, the court may award to a party reasonable attorney's fees. Guillermo Garcia filed a motion pursuant to this statute, but the probate court denied the motion. He does not assign error to this ruling on appeal.

No. 37231-6-III
*In re Estate of Smith*

We previously quoted RCW 11.96A.150. Guillermo Garcia argues the merits of his appeal when contending this court should award him fees under this second statute. We have already rejected those merits.

The estate requests attorney fees on appeal under RCW 11.96A.150. The estate contends that Guillermo Garcia waged a war in an effort to disinherit his brothers. None of his litigation benefited the estate. He never presented evidence that the personal representatives' powers should be modified or rescinded. Instead, they acted as authorized by RCW 11.68.090 and RCW 11.98.070(15). We agree and award the estate reasonable attorney fees and costs against Guillermo Garcia on appeal.

CONCLUSIONS

We affirm the probate court's rulings. We award reasonable attorney fees and costs to the estate of Mildred Smith against Guillermo Garcia.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, J.                                    Staab, J.

26